MOODY & JEMISON v. D. A. AIKEN.

1. FIXTURES.—Later authorities make the true test of a removable fixture to depend not so much on the mere fact of a connection with the realty as upon constructive annexation, the intention of the party in making the same, and the relation which the article bears to the freehold.

2. SAME.—When the article annexed is an accessory necessary to the enjoyment of the freehold, and was erected for the benefit of the inheritance and as an addition thereto, it becomes a fixture, which partakes so much of the realty that its ownership rests with the fee, and is not subject to removal, except by consent.

3. SAME. — But when erected for a temporary purpose, and with the agreement or intention that it shall not be a permanent annexation to the freehold, as for purposes of trade, it becomes a fixture remov-

Statement of the case.

able against the will of the owner of the freehold, if effected at the proper time.

4. BANKER'S SAFE. — It seems that a banker's safe, even if inclosed within a vault the walls of which would have to be partially taken down to effect its removal, is a removable fixture.

5. SAME—SALE OF, BY PAROL. — An agreement, on consideration, for sale of such safe is not within the statute of frauds.

6. SAME.—See facts held sufficient evidence of parol sale, estopping the owner of the freehold from asserting ownership as against such sale.

7. PRACTICE.—Suit may be brought for such fixture, without previous demand and tender of expenses of such removal, where the defendant obtained possession without consent of the owner, and held it without lawful right, claiming to be the owner himself.

APPEAL from Anderson. Tried below before the Hon. R. S. Walker.

September 4, 1876, Aiken, plaintiff below, brought suit against appellants and J. W. Ozment to recover an iron safe and burglar-proof combination-lock chest, together of the alleged value of $1,600, of which appellee claimed to be the owner on the 1st day of January, 1876, and which appellants refused to deliver to him on demand; which property was alleged to be of the value of $25 per month from the 1st day of January, 1876, and which plaintiff claimed as damages for the wrongful detention of the safe and chest. The defendants, Moody & Jemison, answered (1) by a general denial, and (2) claimed the safe and chest as fixtures attached to a house of which they were the owners, together with the lot of ground on which it was situated. Judgment by default was taken against defendant Ozment, for want of an answer, January 11, 1877. The case was tried before the court without a jury. The testimony in the case was substantially as follows, J. W. Ozment being the only witness:

He testified that he owned the safe in controversy in 1875; that he was then doing a mercantile and banking business, near the depot, in Palestine, in the house on lot 5, block 163, known as Ozment's bank building. On the 6th of December, 1875, he made and delivered to appellants, Moody &

Jemison, a deed, of which, it was agreed, the following is the substance: The consideration was $25,000; it conveyed several tracts of land; it was a warranty deed; that a part relating to the house in which the vault and safe was situated was as follows, as to description: "Lot No. 5 in block No. 163, known as Ozment's new brick store and bank building, near the said railroad depot, in Palestine, Anderson county, Texas; to have and to hold, together with all and singular the houses, improvements, tenements, hereditaments, and appurtenances to the same belonging or situated thereon"; which deed was duly recorded in the county clerk's office on the 10th day of December, 1875; that George A. Wright & Co., of which he was the "Co.," carried on the mercantile business and he (witness) the banking business in said house until January 1, 1876. Witness used the safe all the while, paid no rent for it, and regarded it as his. It was in the house in a brick vault. The vault was made as follows: The walls of the house were brick; the floor was laid, except a place near the east wall about ten feet square; this place was laid with brick and mortar from about two feet below the earth's surface to a level with the floor. The safe was rolled in on this foundation and a brick wall about twelve inches thick was built on the south, west, and north sides, and the wall of the main building made the east side. It was built eight feet high, and covered with iron and cement. The only opening into the brick vault was an iron door. The safe could not be passed out of it, as it was about eight inches wider than the door. The safe did not touch either wall of the vault, nor was it fastened or attached to it; but it could not be moved out without making a hole in the wall of the vault, or taking brick from around the iron door frame until a space was made large enough to pass the safe out. It would have cost about ten dollars to have made the opening and repaired it. The safe was placed there by witness, who then owned the land, house, and safe, and intended to do business there the balance of his life, and never expected to

move again. The safe weighed about eight thousand pounds. About the 2d of January, 1876, witness failed in business, sold the safe to appellee, and it was placed as a credit on indebtedness due from witness to him at fifteen hundred dollars. A few days afterwards, about the 6th of January, 1876, Mr. Jemison came to Palestine, and witness told him he had sold Aiken the safe. Jemison then, for the first time, claimed the safe, and so told witness, as having passed by the deed as a fixture. Witness told him he regarded the claim as unfair and unfounded; but to satisfy Jemison, and to the end that witness might perfect Aiken's title to said safe, if it was not good, and to get Moody & Jemison to release their claim to it, he agreed to make them a deed to three lots of land in Palestine, worth about one thousand dollars, and to about six hundred dollars' worth of furniture. Witness had already written a deed to Aiken to three lots, but had not delivered it. Witness tore up the deed, and made Moody & Jemison a deed to the lots and a bill of sale to the furniture, and considered the matter settled. Aiken made witness his agent to hold and sell the safe for him. When witness left the building after he failed, he left the safe there, and Moody & Jemison afterward came into possession of the building, in which the safe was still standing in the vault. Witness had an opportunity to sell it once and wrote to Aiken. He told him to sell it at the price offered or rent it. Witness went to Mr. Ash, Moody & Jemison's agent, and demanded possession of it; and he refused to deliver it, saying that Moody & Jemison claimed it as their property, and that he held it for them.

The safe had not been moved from the time it was put there up to the date of demand, and Moody & Jemison made no deed of release to witness to it, when witness deeded to them the lots and furniture. It was worth about eleven hundred dollars then and now. It could be moved about in the brick vault. The chest or iron vault was inside of the main safe, and weighed about three thousand pounds, and origin-

ally cost about one thousand dollars; but that and the safe were and are now worth about eleven hundred dollars. Witness still has the combination to the lock, and has never given it to any one. The building has not been occupied as a bank since January, 1876, when witness failed. The brick vault was taken down a few months ago by H. Ash, who bought the house of Moody & Jemison, and the safe is now standing against the wall. The bill of sale witness gave D. A. Aiken to the safe was dated January 2, 1876, and was in the usual form, reciting a consideration of fifteen hundred dollars, and saying, "I hereby convey and deliver said safe," describing it and the chest inside of it.

Judgment was rendered for plaintiff, and Moody & Jemison appealed.

*Greenwood & Gooch,* for appellants.

I. That the iron safe and vault in controversy were fixtures, and by deed of conveyance from J. W. Ozment, conveying to appellants the lot and house to which and in which the same were securely and permanently fixed, passed the title to said property from J. W. Ozment to appellants on the 6th day of December, 1875, see 2 Smith's Lead. Cas., 249, 253, 254, 255; Noble *v.* Bosworth, 19 Pick., 314; Brightley's Dig. of Sup. Ct. Rep., p. 427, title Fixtures, s. 6; 1 Bouvier's Law Dic., title Fixtures, item 7; 1 Wash. on Real Estate, sec. 25; Hutchins *v.* Masterson, 46 Tex., 551.

II. If said safe and chest were in fact personal property, and the appellee had acquired a title to the same, prior to the bringing of his suit, by written conveyance from J. W. Ozment, the appellants could not be held legally responsible to appellee for damages for failure to deliver said safe and chest, the appellee having failed in his petition to allege or to show in evidence that appellee ever tendered to appellants the money necessary to compensate appellants for the damage to their property incident to the removal of said safe and chest, or to tender the money necessary to pay laborers to

effect the removal, or to offer the necessary force and labor-
ers at his (appellee's) expense to effect the transfer of the
possession of said property from appellants to appellee.
(Hooban *v*. Bidwell, 16 Ohio, 509; Fletcher *v*. Howard, 2
Aik., 115.)

*R. A. Reeves*, for appellee.

I. The safe and vault in controversy were personal chat-
tels, and not fixtures to the house and lot, so that they would
pass to appellants as purchasers of the house and lot, on De-
cember 6, 1875, under their deed from Ozment. (Hutchins
*v*. Masterson, 46 Tex., 554; McJunkin *v*. Dupree, 44 Tex.,
500; Cole *v*. Roach, 37 Tex., 413; 2 Smith's Lead. Cas.,
248, 254; Walker *v*. Sherman, 20 Wend., 636; Cook *v*.
Whiting, 16 Ill., 480.)

II. The conveyance by Ozment to Moody & Jemison of
other property estops them from claiming the safe in contro-
versy.

BONNER, ASSOCIATE JUSTICE.—This case involves the dis-
cussion of the subjects of fixtures to the extent of deciding
that if the iron safe and chest in controversy is, under the
circumstances disclosed by the testimony, a fixture, it is a
removable one, the sale of which does not come within the
provisions of the statute of frauds.

Appellee, David A. Aiken, on the 11th day of September,
1876, brought suit against J. W. Ozment and appellants,
Moody & Jemison, to recover an iron safe and burglar-proof
combination-lock chest, of the alleged value of $1,600. He
claims to have been the owner thereof on and since the 1st
day of January, 1876, and that the defendants had refused to
deliver the same to him on demand, but claimed title thereto
in themselves; that the use of said property was of the value
of $25 per month since said date, and claims this as damages
for the wrongful detention of the same.

Appellants, Moody & Jemison, answered by general denial

and special plea, in which they claimed title to the property by reason of the same having been a fixture attached to a house and lot of land which they had purchased from the said Ozment.

The plaintiff replied, and claimed title in himself by sale of said safe and chest, also from Ozment. Judgment by default was taken against this last-named defendant. A jury was waived, the cause tried by the court, and judgment was rendered for the plaintiff for the safe and chest and writ of possession awarded; and in the event of failure to deliver the same, that the plaintiff recover the sum of $1,100, value of same, as proven; also, that he recover the sum of $154 as damages for the wrongful detention. Motion for new trial, made by appellants, overruled. They appealed, and filed the following assignment of errors:

"First. That the court erred in finding for the plaintiff against these defendants, because the facts show that the property sued for was real estate, and was the property of these defendants.

"Second. That the court erred in permitting the witness Ozment to testify that these defendants agreed to release their claim to said iron safe, in consideration of the sale of three lots in the city of Palestine to them by said witness, on January 6, 1876, because the testimony of said witness showed that the pretended release was verbal, and not in writing, and was void on account of the statute of frauds.

"Third. That the court erred in assessing the damages for the detention of said safe against these defendants at one hundred and fifty-four dollars, because the evidence shows that plaintiff declined to bear the necessary expense or to perform the labor necessary to remove the said safe from the brick vault in which it was inclosed and situated when he purchased it, and out of which vault the said iron safe could not be removed without the labor and expense of making an opening in or removing the casement; and defendants were not bound to go to any expense or to do any dam-

age to their own building to make delivery of said safe to the plaintiff."

The first and second alleged errors assigned present the principal questions in the case, and will be considered together.

At one time the law of fixtures was seemingly more an arbitrary designation of things which were and which were not fixtures than defined rules founded on certain and fixed principles. More recent decisions have, however, to some extent, brought order out of this confusion, and have established for our guidance certain rules founded on reason and custom. These make the true test of a removable fixture at least to depend not so much on the mere fact of " a ligature, a bolt, or a screw " as upon constructive annexation, the intention of the party in making the same, and the relation which the article bears to the uses of the freehold. (Hutchins *v.* Masterson, 46 Tex., 555; Teaff *v.* Hewitt, 1 Ohio St., 511; Ottumwa Mill Co. *v.* Hawley, Iowa Sup. Ct., cited in 3 C. L. Jour., 657; Hare & Wallace's Notes to Elwes *v.* Mawe, 3 East, 38; 2 Smith's Lead. Cas., 196.)

The leading case of Elwes *v.* Mawe, *supra*, is said to be chiefly celebrated as having decided that there are cases in which things annexed to the freehold may be disannexed and carried away by some person claiming a property in them as against the owner of the freehold.

If this distinction between that class of fixtures which are so annexed and incorporated into the freehold as to become a part of the same, and which are not removable as a matter of right, against the consent of the owner, and that class which are not so incorporated, is kept in view, it is believed that much of the difficulty on this vexed question can be obviated, and many of the apparently conflicting decisions can be reconciled.

When the article annexed is an accessory necessary to the enjoyment of the freehold, and was erected for the benefit of the inheritance and as an addition thereto, then, as a general rule, it becomes a fixture which partakes so much of the

realty that its ownership rests with the fee to the land, and it is not subject to removal, except by consent.

But when erected for a mere temporary purpose, and with the express or implied agreement or intention that it shall not be a permanent annexation to the freehold, then, as to a trade fixture at least, for reasons of public policy, and "in favor of trade and to encourage industry," it becomes a fixture removable against the will of the owner of the freehold, if effected at the proper time.

We find in digests reference to adjudicated cases upon the subject of bank safes as fixtures; (Folger v. Kenner, 24 La. Ann., 436, cited in 4 U. S. Dig., N. S., 317, sec. 8; Dostal v. McCaddon, 35 Iowa, 318, cited in 2 C. L. Jour., 147;) but as we have not access to the reported cases in full, and as this case, under the view we take of it, will not be remanded, it is not necessary to determine whether or not the safe in question is a fixture. If we should hold it to be a fixture, it would be of that class above designated as a removable fixture, and the sale of which would not come within the provisions of the statute of frauds.

In the sixth edition of 3 Parsons on Contracts, 34, it is said that a contract for the sale of removable fixtures is not within the statute of frauds.

In Brown on the Statute of Frauds, sec. 234, it is said: "In the case of fixtures which are in no sense incorporated with, but merely annexed to the freehold, the rule is well settled, that the fourth section does not apply to render verbal contracts for the sale of them inoperative. As has been correctly observed, a transfer of fixtures simply seems to be nothing more than a transfer of the right which the vendor has to sever certain chattels attached to the soil, but not part of the freehold;"—citing Chitty on Contracts, which fully sustains this view.

In a recent work on Fixtures, in considering the question of their sale, as such, irrespective of the sale of the real estate to which they are attached, it is said: "And here it may be

affirmed as a rule, that things by their annexation to the land lose their character of goods and chattels, and yet the right to fixtures is not an interest in land. It would seem to follow, therefore, as a corollary from this proposition, that fixtures which a party has the right to sever and take away from the land might be transferred by the same means and forms that personal chattels of equal value might be passed from one party to another; and the better opinion is in accordance with this view.   *   *   *

" When the contract relates to a transfer of fixtures together with the land, of course it falls within the provision of the statute of frauds requiring a memorandum in writing; and in such case any agreement for the sale or valuation of the fixtures, although it may be of a chattel interest only, must doubtless be in writing, and executed according to the formalities of the statute." (Tyler on Fixtures, 728, 168. To the same effect is Roberts on Fraud, 125.)

This does not conflict with the case of Hutchins *v.* Masterson, 46 Tex., 555. The proposition, as there announced, was based upon the hypothesis " that the mill was annexed to and part of the land."

Under the authority of the case of Hutchins *v.* Masterson and others cited above, the intention of the parties becomes a controlling element in the determination of the question, whether a particular annexation has or has not assumed the character of a fixture.

From the evidence in this case, the doubt and controversy in regard to the character of the annexation in issue here seem to have been determined by compromise and agreement of the parties themselves, by the payment to appellants, by J. W. Ozment, of property in value nearly equal to that of the safe and chest. (Cook *v.* Whiting, 16 Ill., 480.)

This of itself might be sufficient upon which to base our decision of this issue between the parties; but when taken in connection with the fact that, in our opinion, the sale is a legal one, we think it conclusive.

As regards the third error assigned, it might be sufficient to say that neither the issues raised by the pleadings nor the evidence in the case place the failure to deliver the property, on demand therefor, upon the ground of want of tender of money to place the same in condition so that it could be removed, but upon that of ownership in the appellants. However, in Shoemaker *v.* Simpson, Kan. Sup. Ct., 1875, reported in 3 C. L. Jour., 132, it is held, that a suit may be instituted for a fixture without previous demand, where the defendant obtained possession of the same without the consent of the owner, and held it without lawful right, claiming to be the owner himself.

There being no error apparent in the record, the judgment below is affirmed.

JUDGMENT AFFIRMED.