## R. L. BROWN v. J. F. ROLAND.

### No. 897.

**1. Statute of Frauds—Sale of Fixtures.**

The sale of removable fixtures does not come within the provisions of the statute of frauds requiring that the sale of land shall be evidenced by a memorandum in writing.

**2. Fixtures Forming Part of Realty—Sale and Severance.**

Where the owner of land on which there are fixtures constituting part of the realty sells the fixtures, but there is no actual severance of them from the realty, the sale itself will not convert them into personalty so as to prevent them from passing to a purchaser of the land without notice of such sale.

**3. Fixtures—Engine and Mill Machinery.**

A stationary steam engine and boiler used in running a gin and mill, the boiler being cased in by a brick casing extending from the ground below the surface, and which would have to be torn down to remove the boiler, and the engine being bolted by iron bolts to heavy timbers set in the ground, are fixtures forming part of the realty, as also are gin stands fixed in wooden frames, bolted or nailed to the floor of the gin house.

**4. Same—Notice.**

A purchaser of land upon which there are fixtures that have already been sold to another, though not severed from the realty, does not by his deed acquire title to the fixtures, if he has actual notice of such sale at the time of his purchase.

**5. Possession of Tenant as Notice.**

The possession of land by a tenant and his operation of a gin and mill situated thereon will not operate as constructive notice to a purchaser of the land that such tenant claims certain fixtures forming part of the mill and gin machinery as his own property.

APPEAL from Kaufman. Tried below before Hon. J. E. DILLARD.

*J. S. Woods,* for appellant.—1. In the conveyance of real estate by deed from A to B and from B to C, all fixtures, such as houses, mills, gins, stationary boilers and engines permanently attached to land adapted to the use and enjoyment of the free hold, pass with the land by virtue of the deed, unless special reservation of title to said fixtures is made in the deed in favor of some one of the grantors, or in favor of some other person than one of the grantors, or unless an actual severance of said fixtures from the land has taken place by permission of some one of the owners of the fee. Jones v. Bull, 85 Texas, 136; Elwes v. Mawe, 1 Smith's Lead. Cas., 200; Powel v. The Manson Mfg. Co., 3 Mason, 459; King v. Johnson, 7 Gray, 239; Meig's Appeal, 62 Penn., 28; Elwes v. Mawe, 2 Smith's Lead. Cas., 201; Harlem v. Harlem, 3 Harris, 507; Heaton v. Findlay, 2 Jones, 204; Gray v. Haldship, 17 Am. St. Rep.,

409; Roberts v. Dauphin Bank, 7 Harris, 71; Gardner v. Friedlay, 10 Barb., 217; Franklin v. Moulton, 5 Wis., 1; Ewell on Fixtures, 319, 344.

2. A permanent, immovable fixture annexed to land becomes a part of the realty, and the title thereto will not pass to one not the owner of the fee, unless it is in writing. Hutcheson v. Masterson, 46 Texas, 555; Jones v. Bull, 85 Texas, 136; McIntosh v. Trotter, 3 M. & W., 184; Goff v. O'Connor, 16 Ill., 421; Heaton v. Findlay, 2 Jones, 202; Roberts v. Dauphin Bank, 7 Harris, 71; Minshall v. Lloyd, 2 M. & W., 460; Weeton v. Woodcock, 7 M. & W., 14; Cresson v. Stout, 17 Johns., 116; Burnside v. Twitchell, 41 N. H., 388; Wadleigh v. Jandier, 41 N. H., 505; Laflin v. Griffith, 35 Barb., 58; Elwes v. Mawe, 2 Smith's Lead. Cas., 198, sec. 4; Ewell on Fixtures, 43, 344.

3. If machinery such as is involved in this controversy once becomes attached to or annexed to the freehold and is adapted to the use and enjoyment thereof, it becomes in law a part of the land, and a verbal sale thereof is void as against a lien holder upon the land, unless a severance of said fixtures takes place from the land before his rights accrue. Hutcheson v. Masterson, 46 Texas, 555; Bond v. Coke, 71 N. C., 97; Noble v. Bosworth, 14 Pick., 314; Connor v. Coffin, 22 N. H., 538.

*Cunningham & Terry* and *John Vesey* for appellee.—1. Whether or not a fixture is a personal chattel or a part of the realty, is a mixed question of law and fact, and when it is a chattel, a parol sale will pass the title to same. Moody v. Aiken, 50 Texas, 73; Harkey v. Cain, 69 Texas, 146; Implement Co. v. Electric Light Co., 74 Texas, 608.

2. The owner of land may agree that a fixture annexed to same shall be severed from same and belong to another, and after such agreement, the fixture is a personal chattel, and will not pass with the freehold in a deed to the freehold. Moody v. Aiken, 50 Texas, 73; Harkey v. Cain, 69 Texas, 146; Cole v. Roach, 37 Texas, 413; McJunkin v. Dupree, 44 Texas, 500; Hutchison v. Masterson, 46 Texas, 554; Russell v. Richards, 25 Am. Dec., 254; Russell v. Richards, 26 Am. Dec., 532; Foster v. Mabe, 37 Am. Dec., 749; 2 Addison on Contracts, sec. 651.

FINLEY, Associate Justice.—The appellant Brown brought this suit December 13, 1892, against appellee Rowland, alleging title in himself to 921 acres of land upon which was situated mill and gin property asserted by plaintiff to be fixtures on the land, the title to which plaintiff alleged to be in himself, and that defendant was about to remove the said fixtures from said land. He prayed for and obtained a temporary injunction to restrain defendant from tearing down and removing the mill, boiler, engine, gin stands, mill and apparatus therefrom.

The defendant answered (1) by general denial under oath; (2) that appellee purchased the machinery in controversy long before the plaintiff became the owner and holder of the land on which same is situated, and at said time one T. J. Montgomery was the owner and holder of the land on which the machinery is situated, and as such, agreed with the

appellee that he might operate such machinery on this land five years, or as long as appellee might wish; and further alleged that the plaintiff had knowledge of the claim and ownership of appellee to the machinery before plaintiff became the owner of the land; and also in reconvention for damages for injury to the machinery and loss of the use of same. The trial resulted in a verdict and judgment for the defendant Rowland for the value of the machinery, and for damages against plaintiff.

Appellant's first assignment of error presented is, "The court erred in refusing to sustain plaintiff's special demurrer to defendant's first amended original answer, wherein plaintiff set up the statute of frauds against defendant's claim to said fixtures by parol."

The answer set up claim to the machinery in controversy as personal property, removable fixtures, situated upon the land of appellant, and charged that at the time appellant purchased the land he knew that such machinery was the property of appellee.

In Moody v. Aiken, 50 Texas, 73, it is held that the sale of removable fixtures does not come within the provision of the statute of frauds, requiring that the sale of land shall be evidenced by a memorandum in writing. The court did not err in this particular.

Appellant's second assignment of error: "The court erred in refusing the following special charge asked by plaintiff, to-wit, 'The jury are charged that if the evidence does not show an actual severance of the mill and gin machinery in question by some of the owners of the fee in the land on which the machinery is situated, previous to the time when plaintiff became the owner of the land, then, and in that event, the machinery in question passed in the sale and deed made by the sheriff of Kaufman County to the plaintiff herein, and the jury should so find.'"

The court charged the reverse of this proposition. After attempting to define a fixture, he instructed the jury that, "the owner of such property (fixture) may sell the same by verbal sale, and then such property ceases to be a fixture or part of the realty and becomes personal property, and the purchaser may enter upon the land and remove the same if he can do so without permanent or substantial injury to the land or house."

The evidence shows that T. J. Montgomery and wife, by deed dated January 15, 1890, conveyed the land upon which is situated the mill and gin property, boiler and engine in controversy to one B. J. Johnson. This deed was proven for record August 7, 1890.

August 7, 1890, B. J. Johnson made his sworn application through C. M. Banks, at Waco, Texas, for a loan on the 921 acres of land which was conveyed to him by Montgomery and wife. C. M. Banks, a loan broker, secured a loan on the land for B. J. Johnson from Brown Bros., of Austin, Texas, as shown by the deed of trust executed by B. J. Johnson and wife on the 18th day of August, 1890, to R. L. Brown, one of the Brown Bros., as trustee. The sum secured by Johnson was $6000. The consideration recited in Montgomery's deed to Johnson for the purchase of this land is $17,200,

cash paid.  B. J. Johnson made default in the payment of said money obtained by said loan, and said trust deed was foreclosed in the District Court of Travis County.  Order of sale issued upon said judgment dated January 11, 1892, and plaintiff bought the land upon which the fixtures were and are now situated.  The order of sale through which plaintiff deraigns title was dated February 4, 1892.  The sheriff of Kaufman County sold the land, and made the plaintiff a deed thereto by virtue of said order of sale, which deed is dated March 2, 1892.  Neither the deed from T. J. Montgomery and wife to B. J. Johnson and wife, nor the deed of trust made by him and wife to R. L. Brown, nor the judgment in favor of J. Gordon Brown, nor the sheriff's deed to plaintiff, makes any reservation of said gin property in favor of defendant Rowland. It was admitted in open court that the title to the land described in plaintiff's petition 'was in plaintiff, and that both parties claimed the machinery through T. J. Montgomery as a common source.

It was proven that the boiler and engine in controversy are situated under a shed which is a part of the gin house building.  The boiler is cased up and around with brick; the top of the boiler is not quite covered, there are iron bands around the casing.  The brick casing extends from the ground, below the surface, and would have to be torn down to remove the boiler.  The engine is bolted to hewn square timbers about 16 or 18 inches wide and 10 or 12 inches thick, which are set in the ground.  The engine is bolted to these square timbers with four iron bolts, one at each corner of the engine, coming up through the timbers and through the corners of the engine, and are screwed down with taps, and by this means the engine is made stationary.  The engine and boiler are recognized as stationary machinery.  There is a gin house there which has a ground floor and upper floor.  The shafting was set on a frame made of scantling and set in the ground on the ground floor, and the gin stands were on the upper floor set in a frame made of scantling about 4 by 6 inches, bolted or nailed to the floor, and the gin stands set into these frames.  There were two of these frames nailed to the floor, and the two gin stands set into them to hold the stands in a steady position.

Montgomery erected the building and put the gin and mill upon this land several years before he sold the land to Johnson, and ginned cotton and ground corn for the public.  While he, Montgomery, was owner of the land and the machinery, he sold the machinery to defendant Rowland and agreed that he, Rowland, might continue to operate it upon the land for five years, or as long as he desired to do so.  This sale was verbal, and neither Brown Bros. nor appellant had any actual notice of it until after the purchase of the land under the foreclosure sale. Johnson, at the time the property was deeded to him, knew of the sale to Rowland, and acquiesced in it.  At the time the deed of trust was given upon the land by Johnson to Brown to secure the $6000 loan, and at the time of the sale thereunder, Rowland was upon the land as tenant of Johnson, cultivating and using it, and was operating the gin

and mill for himself, and claimed it as his property. Brown Bros. and plaintiff lived in Austin, Texas, and had no actual knowledge of Rowland's possession or claim until after the foreclosure sale. Rowland testified that appellant's agent was informed by him on the day before the land was sold by the sheriff that the machinery belonged to him, Rowland.

In the description of the land made in Johnson's application for the loan, the gin house is mentioned as being upon the land, but nothing is said as to machinery. C. N. Banks, the broker who secured the loan for Johnson, did represent, in soliciting the loan, that there was a mill and gin on the property, which enhanced its value.

This will be a sufficient recital of the facts, so far as they relate to the respective claims of the plaintiff and defendant to the ownership of the property, to be considered in passing upon the presentation of the case by the trial court to the jury.

It is quite clear that the gin and mill property was placed upon the land by the owner in an enduring form, and with the view of profiting by its operation; while there is nothing to indicate that he intended otherwise than that it should become a permanent accession to the freehold. It is certain that such fixtures must be treated as a part of the land by strangers. Jones v. Bull, 85 Texas, 136. That such fixtures would pass by deed to the land without reservation, as between the vendor and vendee, there can be no question. It is also true, that the owner may detach such fixtures from the land, or allow another to so detach them, and pass the title to them by parol sale. Moody v. Aiken, 50 Texas, 73. He may also so treat such fixtures in contracting with another as to estop himself from asserting that they are a part of the realty. But, can he pass title to such fixtures by parol sale without detaching them from the land, as against an innocent purchaser or lienor for value, without notice of such sale? Without going into the refinements of the question whether the gin and mill property are immovable or removable fixtures, it is sufficient here to say, that they were so attached and appurtenant to the land that they would pass by deed to the land without any reservation, as between the vendor and vendee, therefore the purchaser without notice would have the right to consider them as a part of his purchase for which he paid consideration. In Hutchinson v. Masterson, 46 Texas, 555, Justice Moore, in discussing this question, says: "On the other hand, if the mill was annexed to and part of the land, a parol sale of it, even by the owner of the land, would be void, because in conflict with the statute of frauds. * * * And if this was not so, as the property still remained annexed to the land, it must be held that the vendee, Wells Thompson, who had no notice of the previous contract for the sale of the mill by his vendor, got by his deed the better title." Citing Bringhoff v. Munzenmeier, 20 Iowa, 513; Richardson v. Copeland, 6 Gray, 536.

In the Bringhoff case, it is held that the title to a malt kiln, beer cooler and kettle, used for manufacturing beer, passed to the purchaser

of the land upon which the same was situated, as against the holder of a mortgage upon said fixtures of which the vendee had no notice. The mortgage being recorded among the chattel mortgages, and not in the record for liens upon realty, was held not to constitute notice.

The Richardson case holds that a steam engine set upon granite blocks and fastened down by bolts, and a boiler set in brick in such a manner that it can not be removed without taking down the brick, and both used for running machinery in an adjoining shop, become a part of the realty; and evidence of a general usage and custom between manufacturers and purchasers of such property to regard it as personalty is incompetent; and a mortgage thereof to the manufacturer as personal property, executed contemporaneously with the bill of sale from him, after the engine and boiler have been put into operation, passes no title in them as against a subsequent purchaser of the land.

The special charge requested ignores the question of notice of the defendant's purchase. While the authorities are conflicting upon the proposition, we think those authorities which hold that a purchaser of the land, with notice that undetached fixtures have been previously sold to another, occupies the same relation to such fixtures as his vendor did, and that such fixtures do not pass by the deed, best conform to the principles of reason and justice, and should receive our sanction. The special charge, therefore, should not have been given. It is equally clear to us that the portion of the charge of the court quoted above does not correctly state the law as applicable to a purchaser of the land without notice of a previous sale of undetached fixtures. If a stranger acquires a lien upon, or a title to, a tract of land upon which there is situated and attached fixtures of the character of those in controversy, without notice that his vendor has sold the fixtures to another, he is not affected by such previous sale, and the title to the fixtures passes by the deed to the land. Whatever may be said as to the rights of the immediate vendor and vendee of such fixtures, as between themselves, such a sale does not change the character of the property as against a purchaser without notice; as to such purchaser, there has been no constructive severance of the chattel from the realty. This part of the charge of the court is made the basis of the thirteenth assignment of error, and the assignment is well taken.

The sixth paragraph of the charge of the court is also assigned as error. It is as follows: "The jury are further charged, if they believe from the evidence that on or about the first week in August, 1890, and prior to the 18th day of August, 1890, that the defendant J. F. Rowland purchased the steam engine, boiler, gin stands and other machinery described in plaintiff's petition from T. J. Montgomery, who was at the time of such purchase the owner of the land and premises described in plaintiff's petition, and that he, defendant, was authorized or granted permission by said T. J. Montgomery and B. J. Johnson to occupy the gin house upon said land for the purpose of operating said machinery, and that he was openly and notoriously in the possession of said gin

house and machinery from the time he first entered until the 18th day of August, 1892, and that said property was completely under his own dominion and care during such time, and that he had purchased the same from T. J. Montgomery in good faith and had authority to remove the same from said land and premises whenever he desired, they should find for the defendant for said machinery," etc.

The effect of this charge is, if Rowland purchased the fixtures of the owner of the land, Montgomery, prior to the execution of the deed of trust under which plaintiff claims, and was at that time in open possession of the machinery with authority to remove it when he wished to do so, he was entitled to recover; his possession, under the circumstances stated in the charge, being treated by the court as notice of Rowland's claim to the property. Can it be said, as a matter of law, that the possession of Rowland was notice of his claim to ownership of the gin and mill machinery?

In many cases in our reports, the proposition is asserted, that possession is notice of whatever title or right the party in possession has to the land. In the cases where this proposition is announced, the facts of the particular case made the rule applicable. In Eylar v. Eylar, 60 Texas, 319, Justice Stayton says: "It would seem that the only office which possession performs in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made." It is held in this case, that a purchaser from one whose vendor remains in possession, and whose deed is on record, is not, by such possession, visited with notice of any claim of the party in possession inconsistent with his recorded conveyance. See also, Love v. Breedlove, 75 Texas, 651.

In Smith v. Miller, 63 Texas, 72, it is held that where the party in possession is a tenant under a lease, his possession is not notice of a right he claims independent of his lease. Nothing short of an absolute renunciation of his tenancy, brought home to the purchaser, would be sufficient to give notice of such independent claim. We see from these authorities that possession under all circumstances is not alone sufficient to visit upon the purchaser constructive notice of the rights of the party in possession. If the possession is actual, open, exclusive and hostile, it would unquestionably be sufficient to put parties dealing with the land upon notice of the claim under which such possession is maintained. In such a case, inquiry as to what right the party had to possession would certainly lead to the discovery of his claim to the land. "Whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, and enable him to ascertain their nature by inquiry, will operate as notice." Martel v. Sommers, 26 Texas, 561. In this case, Rowland was in possession of the land as tenant of the owner, cultivating and using the same as such; he was also operating the mill and gin property under his contract of purchase and claim of ownership. It may be conceded, and properly so, that Brown Bros. are chargeable with notice of the fact that he was in possession of the land, and of

·every other fact which inquiry as to his right of possession would have ·disclosed.  Inquiry would certainly have disclosed to them his tenancy; but would it have disclosed his claim to the ownership of the machinery? His possession of the land as tenant would not suggest an independent ·claim or right to the fixtures attached to it, and it is hardly to be supposed that any information on that line would be sought.  To act upon the idea that such information would be given, unless specially sought, would be to substitute quite a doubtful presumption for an important basis of fact.

We are of opinion that Rowland's possession, under the circumstances of this case, should not be regarded as the equivalent of notice, and that the court erred in so treating it.  "The most that can be done in our practice, is to refer the question of notice, when it resolves itself into matter of fact, to the jury, with such general instructions as can be made most applicable to the particular case."  Hines v. Perry, 25 Texas, 454.

There are quite a number of assignments of error presented, which we will not discuss or consider, as the opinion is already lengthy.

Judgment reversed and cause remanded.

*Reversed and remanded.*

Delivered November 23, 1895.