51   263
75   496

## MALVINA RANNEY v. HEINRICH MILLER.

1. ESTOPPEL.—Money was loaned to an agent on a lot, a trust deed being executed therefor in the name of the principal by the agent. The legal title to the lot was in the principal. The lot was sold under the deed of trust and bought by the beneficiary, who brought suit against the widow of the agent, who claimed homestead rights on the lot: *Held*, That the widow was estopped from denying the title of plaintiff.

2. SAME — COMMUNITY PROPERTY. — The wife's interest in the community property is held in privity with the husband. The power of the husband over the community estate by estoppel is not less than that of a partner to estop his firm.

3. HOMESTEAD IN AN EQUITY.—The title to land having been taken to one, another, acting as his attorney under a written power, and executing a trust deed to secure a loan made in the name of the one holding the legal title, cannot affect the right of the lienholder, nor of a purchaser under the trust deed, by asserting homestead rights upon the land.

4. PLEADING IN TRESPASS TO TRY TITLE—ESTOPPEL.—A defendant pleaded not guilty and filed an affidavit attacking the genuineness of a power of attorney, copy of which plaintiff had filed with notice under the statute : *Held*, That by such affidavit the defendant sufficiently indicated the nature of defense to authorize plaintiff, by amended petition, to allege facts constituting an estoppel against defendant as to such instrument attacked.

APPEAL from Galveston.    Tried below before the Hon. William H. Stewart.

Miller brought this suit on the 21st of February, 1878, in the District Court of Galveston county, against Malvina Ranney, in the ordinary form of an action of trespass to try title, to recover possession of the north half of the northeast quarter of the northeast block of out-lot 93, and improvements thereon, claiming title to and possession of the same on the 5th day of December, 1877, when defendant entered.

April 4, 1878, defendant below pleaded not guilty.

Plaintiff, on the 19th of July, 1878, filed notice under the statute of the filing, as evidence, the certified copies of the recorded title, and gave defendant notice to produce such originals as were in her possession, viz., certified copies—

1. Deed from Galveston City Company to Granville H. Sherwood.

2. Granville H. Sherwood to Louisa Broussard, wife of Corniellee E. Broussard.

3. Deed from Louisa Broussard and husband to A. H. B. Livingston.

4. Power of attorney from Livingston to R. H. Ranney to mortgage for purchase-money.

5. Deed of trust by Livingston, by Ranney's attorney, to secure purchase-money; Truehart and Minor, trustees.

6. Release by Broussard and Truehart to Livingston; purchase-money secured by trust deed.

7. Power of attorney from A. H. B. Livingston to R. H. Ranney to raise money by mortgage to improve, &c.

8. Original deed of trust by Livingston, by attorney Ranney, to Buttlar, trustee, for $1,000; benefit of Miller.

9. Deed of trust by Livingston, by attorney Ranney, to Hugo Brosig, trustee; benefit of Miller.

10. Deed from Hugo Brosig to Heinrich Miller for the property.

June 20, 1878, defendant filed her affidavit that she believed the powers of attorney which she was requested by the notice to produce were forgeries, setting them out.

October 7, 1878, plaintiff, by leave, filed his first supplemental petition, denying that the powers of attorney were forgeries, but if they were, that they had been made by R. H. Ranney to defraud and deceive plaintiff; that Ranney—by the record title in Livingston, by the powers of attorney, and by his representations—had induced plaintiff to believe, and to act on that belief, that the property was Livingston's, and that he (Ranney) was the duly authorized attorney for said Livingston; that Ranney had rendered the property for State, city, and county taxes as Livingston's; had insured the houses as Livingston's; had contracted mechanics' liens on the property as Livingston's, and had, by his acts and conduct, obtained from him (plaintiff) $1,500, no part of which had been paid; that Ranney and all claiming under him were insolvent; and setting up that he had on these record titles dealt in good faith, without knowledge of wrong, and that the defendant, claiming possession through Ranney, was estopped from denying the authority of Ranney to execute said trust deeds, or the title of A. H. B. Livingston, or that of plaintiff, claiming under him.

October 16, 1878, defendant filed her motion to strike out the plea of estoppel.

October 19, 1878, plaintiff filed his affidavit that he could

not procure the originals of the certified copies of recorded deeds and powers of attorney filed in evidence, and setting them out; also making affidavit that the originals of the third, fourth, fifth, sixth, and seventh of said copies are in possession of defendant, who had been notified to produce them.

December 4, 1878, defendant filed her first supplemental answer, and demurred generally and specially to plaintiff's first supplemental petition, filed 7th of October, 1878, and answered, setting up that Roderick H. Ranney had forged the powers of attorney; that the property had been purchased with community funds of herself and Ranney; that she, with her husband and children, went on it in 1873, and had together occupied it as a homestead; that she gave notice at the sale to Miller that she claimed it as homestead, and claimed said powers of attorney were forgeries; setting up in detail all the acts of Ranney as fraud upon her, and charging plaintiff with notice at the time of advancing the money to Ranney and the making and delivery of the deed of trust; that plaintiff had notice; that defendant was in possession of the lots, claimed said lots as homestead, and denied all the allegations in plaintiff's original and supplemental petitions.

November 4, 1878, plaintiff filed his second supplemental petition, denying any knowledge of the rights of defendant, or of the wrongful acts of Ranney, or any participation in the frauds of Ranney at that time, or during his ( Ranney's) life.

The case was tried by a jury and the verdict was for the plaintiff, for the land in controversy and $10 rent. Judgment was entered accordingly. Motion for new trial being overruled, defendant appealed.

On the trial, the deeds, of which notice of filing had been given, were read in evidence. The two powers of attorney purporting to have been made by Livingston were excluded, save as evidence of estoppel against Ranney and those in privity with him    It was shown by depositions of J. E. Fos-

ter, a notary public of Houston, that they had been acknowledged before him, though he had no recollection of the transactions. The certificates of acknowledgment were in his handwriting. His notarial records had been destroyed by fire.

It was in evidence that Ranney negotiated for the purchase of the lot in the name of Livingston,—as attorney of Livingston, executed a trust deed for a balance due on the purchase-money; that Ranney was an Episcopal minister and had officiated as such in Galveston, and had held a clerkship in the Galveston post-office. Ranney had paid the taxes on the lots as Livingston's; had made the loans under which Miller bought as agent and attorney of Livingston; had taken out a policy of insurance on improvements on the lot as security for the second loan, in the name of Livingston. This loan appears to have been made to pay off mechanics' liens upon the property, debts incurred by Ranney. When making the larger loan, Ranney was asked by Miller's attorney about Livingston and his confidence in him, and Ranney replied: "Livingston was an old classmate of mine, and put his property in my hands to assist me." Miller was notified of the claim of Mrs. Ranney before the foreclosure sale.

In the defense, Mrs. Ranney testified that she and her husband had come from Guadalupe county to Galveston; that the lot was purchased by her husband, in part with community funds and in part with money derived from the sale of their former homestead, her separate property. She had no knowledge of the condition of the property until after her husband's death. She had heard of Livingston several times, but not in connection with the lot; did not know him. She and her husband had resided on the lot from June, 1873, until his death, October 30, 1877, as homestead. She had found the powers of attorney, the originals, among the papers of her husband, and the signature thereto was in the handwriting of her husband. She was still in possession of the lots.

The charge of the court sufficiently appears in the opinion.

*Trezevant & Franklin,* for appellant.

I. The court erred in overruling the exceptions to the plea of estoppel in the supplemental petition. The record, up to the time this plea was filed, discloses no pleading by the defendant except "not guilty," unless the affidavit attacking the genuineness of title papers filed by plaintiff be considered as pleading. (Paschal's Dig., art. 3716; Stephens on Plead., 196, 198, 402; Big. on Est., 283, 619; Jordan v. Robson, 27 Tex., 615; Younge v. Guilbeau, 3 Wall., 640; Mattox v. Hightshuer, 39 Ind., 95; Doe v. Howells, 2 Barn. & Adol., 747.)

II. The plea of estoppel does not set up any title, deed, or act of appellant or of her husband, R. H. Ranney, or of their privies. (Kerr on Fraud and Mistake, 315.)

III. The wife is not privy with her husband so that she can be estopped by his acts from asserting her property rights. (1 Greenl. Ev., sec. 189; Big. on Est., 74; Herm. on Est., 334.)

IV. The estoppel should have been set aside. (Stephens on Plead., 352; Gould on Plead., 77; Big. on Est., 600; Coke on Lytt., 303a, 352b.)

V. The charge of the court submitting the issue as to the estoppel was inapplicable to the case.

Before appellee bought, he had notice that appellant was asserting homestead rights in the property, and claimed that the two powers of attorney were forged. Appellee does not show any knowledge or participation by appellant in the fraudulent acts of her husband. She testifies that she had no knowledge of any of his fraudulent acts. (Smyth on Homesteads, secs. 112, 113, 114; MacManus v. Campbell, 37 Tex., 268; Spencer v. Geissman, 37 Cal., 99; Brooks v. Hyde, 37 Cal., 367; Randal v. Elder, 12 Kan., 261; Eckhardt v. Schlecht, 29 Tex., 134; Wood v. Wheeler, 7 Tex., 19; Eli v. Gridley, 27 Iowa, 376; Barker v. Dayton, 28 Wis., 367.)

VI. The court erred in charging that the trust deed and its foreclosure exhibited a title as against appellant. (Hughes

*v.* Lane, 6 Tex., 289; Stroud *v.* Springfield, 28 Tex., 671; Linthicum *v.* March, 37 Tex., 350.)

*Edward T. Austin,* for appellee, cited Johnson *v.* Byler, 38 Tex., 612; Big. on Est., 59, 60, 480; Kimbro *v.* Hamilton, 28 Tex., 568; Williams *v.* Chandler, 25 Tex., 11; Box *v.* Lawrence, 14 Tex., 556; Cooke *v.* Bremond, 27 Tex., 460; Paschal's Dig., arts. 997, 4978, 4697, 3716; Peck *v.* Moody, 23 Tex., 93; Meuley *v.* Zeigler, 23 Tex., 88; Ballard *v.* Perry, 28 Tex., 363; Stephens *v.* Hix, 38 Tex., 658.)

GOULD, ASSOCIATE JUSTICE.—The facts alleged in Miller's supplemental petition were sufficient to estop R. H. Ranney, or any one claiming under or in privity of estate with him, from denying, as against Miller, the validity of Livingston's title or of the powers of attorney from Livingston to R. H. Ranney.

2. Mrs. Ranney's community interest in the lots was held in privity of estate with her husband's community interest, and the title of the community being controlled by her husband, she also was estopped in like manner with her husband, in so far. as her claim was of a mere community interest. The power of the husband to bind the community estate by estoppel, is certainly not less than that of a partner to estop his firm. ( Griswold *v.* Haven, 25 N. Y., 595.)

3. The title to the lots was never in the community, but the extent of the community interest was at most a mere equity or resulting trust. By the establishment of the homestead on the lots, the community acquired no new or better title thereto. The equitable rights of the community were still subject to the superior legal or equitable rights of others. The homestead right being attached to a mere equity, was dependent thereon. The fraudulent acts of the husband might be such as to defeat the equitable interest of the community, and thereby to defeat the imperfect or dependent homestead right. The case differs widely from one where

the homestead is fixed on land to which there is a legal title, as in Eckhardt *v.* Schlecht, 29 Tex., 129. It is more analogous to the case of a homestead incumbered by liens and still within the husband's control.

4. These principles are a sufficient answer to the propositions of appellant, unless, as claimed in several of the assignments of error, he is entitled to a reversal of the judgment because the court refused to strike out the plaintiff's supplemental petition setting up the estoppel and overruled the exceptions of defendant thereto. Our opinion is, that the affidavit of defendant, impeaching as forgeries the powers of attorney to R. H. Ranney, sufficiently indicated the nature of the defense to make the allegations of estoppel appropriate, and, further, that the privity of estate between Mrs. Ranney and R. H. Ranney, her husband, appeared sufficiently from the averments of the supplemental petition. But even if this were not so, the amended answer of defendant showed that Mrs. Ranney claimed through the community, and therefore in privity of estate. After that answer, it is not perceived how she can complain of the rulings of the court on the pleadings.

Indeed, it is by no means clear that, if the case had gone to trial on the pleadings as they were before the supplemental petition, the plaintiff might not have introduced his evidence of estoppel for the purpose of making out his case.

The judgment is affirmed.

Affirmed.