MARTIN et ux. v. GRANGER. (No. 1992.)

(Court of Civil Appeals of Texas. Texarkana. June 11, 1918. On Motion for Rehearing, June 30, 1918.)

1. HOMESTEAD &#9680;&#8658;96—VENDOR'S LIEN—ANTECEDENT DEBTS.

Where the owner of a lot not fully paid for contracted for the building of a house thereon, and subsequently, being unable to meet his payments, rescinded the contract of purchase, destroyed his unrecorded deed, and had title taken in the name of the contractor, who in turn conveyed it back to the owner, retaining a vendor's lien, the homestead right of the owner attached before the transfer was made, the lot having been dedicated for that purpose, and the dedication having been completed when the improvements were begun, so that as to parties with notice no valid lien could be created to secure the antecedent debt.

2. HOMESTEAD &#9680;&#8658;129(2)—RIGHT TO ENFORCE—INNOCENT HOLDER.

While an attempt to unlawfully incumber the homestead may be invalid as between the parties to the original contract and those having notice, the homestead right will not be en-

forced against an innocent holder for value of the debt and lien thus created.

3. HOMESTEAD &#9680;&#8658;129(2)—BONA FIDE LIENHOLDERS—NOTICE.

Where the owner of a homestead not fully paid for contracted for the erection of a house, and, being unable to meet his payments, arranged with the contractor for the taking of title in his name, to be subsequently transferred to the owner incumbered with a vendor's lien, the fact that the deed from the original vendor to the contractor had not been recorded was not sufficient to put the bank, purchasing vendor's lien note, upon notice of irregularity in the title.

4. TRUSTS &#9680;&#8658;357(1)—TRANSFER OF PROPERTY—BONA FIDE PURCHASERS.

That a wife has advanced funds from her separate estate to pay for land does not give her a right which may not be defeated by an unauthorized sale of the land to a bona fide purchaser for value, regardless of the fact that her equity was not susceptible of record.

On Motion for Rehearing.

5. HOMESTEAD &#9680;&#8658;129(2) — VENDOR'S LIEN — CONSTRUCTIVE NOTICE.

Where the holder of a homestead not fully paid for, rescinded his contract, destroyed his unrecorded deed, and had title taken in a person contracting to erect a house thereon, who subsequently conveyed to the owner subject to a vendor's lien, the original owner's possession of the premises was not sufficient to give a bank purchasing the vendor's lien note constructive notice of his homestead rights; a homestead right not being inconsistent with an outstanding vendor's lien.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by L. Granger, trustee for the St. Joseph's Catholic Church fund, against F. T. Martin and wife. From a judgment for plaintiff, defendants appeal. Affirmed.

Y. D. Harrison, of Marshall, for appellants. Bibb & Bibb, of Marshall, for appellee.

HODGES, J. L. Granger, as trustee for the St. Joseph's Catholic Church fund, instituted this suit in the court below against F. T. Martin and wife to recover the balance due upon a promissory note originally for $1,075 and to foreclose a vendor's lien upon the homestead of defendants in the city of Marshall. The note was dated February 4, 1908, and was payable in monthly installments of $20 each. It purported to be for a part of the purchase price of two city lots upon which Martin's homestead was situated, and stipulated for the retention of a vendor's lien to secure its payment. Approximately $900 was due and unpaid when this suit was filed. There appears to be no controversy on this appeal concerning Martin's personal liability for the amount sued for. The principal defense relied upon in the trial below, and urged in this court, is that of a homestead exemption. It is contended that the note was not in fact given as a part of the purchase price of the lots, but as a device to secure the cost of building a house thereon after the homestead claim of Martin and

wife had attached. The record warrants a finding of the following facts: Some time during the year 1907 Martin purchased the lots in controversy from J. H. Strength, agreeing to pay the purchase price of $300 in monthly installments of $15. Strength executed a deed to Martin, but this was never recorded. At the time of this purchase the lots were unimproved, but it was Martin's intention to build a house on them to be used as a home for himself and family. In December of that year he made a contract with B. F. Findley for the erection of a residence, which was completed in January, 1908. Under their contract Martin was to make partial payments to Findley as the work progressed, and to pay the remainder when the building was completed. But for lack of funds Martin failed to meet his payments, and Findley refused to deliver possession of the house when finished. In order to secure Findley for the balance due, Martin and wife executed a mechanic's lien contract; but, upon the advice of attorneys that this would be invalid under the circumstances, that was abandoned. Findley was pressing for his money, and Martin appears to have been willing to make any kind of a contract that would secure its payment. About that time Findley ascertained from Strength that all of the original purchase money for the lots had not been paid by Martin. After a conference it was finally agreed between the parties that Martin and Strength should rescind their contract, destroy the deed which had been made by Strength to Martin, and that Strength should sell and convey the two lots to Findley in consideration of his paying the balance of the purchase money due from Martin. This plan was accordingly adopted. Martin destroyed the unrecorded deed which Strength had made to him, and on the same day Strength executed a deed to Findley; and immediately thereafter Findley conveyed the property to Martin, the deed reciting a cash payment and the note for $1,075. This note provided for its payment in installments of $20 per month, and for the retention of a vendor's lien on the lots in favor of Findley. Within a few days thereafter, and before the first installment became due, Findley, for a valuable consideration, assigned the note to the State Bank of Marshall, and the latter afterwards transferred it to appellee. The bank had no actual notice of the nature of the transaction from which the note resulted, and no notice of any homestead claim on the part of Martin in the property. The evidence seems to be undisputed that it acted in good faith and paid full value for the note. Findley and Martin differed as to when Martin's occupancy of the house began. Martin testified that he was occupying the building when he received the deed from Findley. The latter, however, testified that possession had not been delivered to Martin until after that transaction. Mrs. Martin

filed a separate answer, in which she alleged that the payments made on the original purchase price of the lots prior to the rescission agreement by her husband and Strength were from her separate funds, and for that reason she claimed a separate interest in the property. She further alleges — and her pleadings are supported by the evidence— that she knew nothing of the transaction between Martin, Strength and Findley in which the note sued upon originated. In a trial before the court a judgment was rendered against Martin for the full amount sued for, and an order entered foreclosing the lien.

[1, 2] The evidence justifies the conclusion that the homestead rights of Martin in the property attached before the note and lien here involved originated. The lots were purchased for that purpose; and when he began the erection of the improvements thereon the dedication was complete, and the evidence of it was sufficient to put others upon notice. It is immaterial that neither the house nor the lots had been fully paid for. As between Martin and those having notice of his homestead rights no valid lien could be created to secure an antecedent debt, even though it was incurred for improvements previously placed upon the lots. Rev. Civ. Stat. 5631; Lyon et al. v. Ozee, 66 Tex. 95, 17 S. W. 405; Lignoski v. Crooker, 86 Tex. 324, 24 S. W. 278, 788. But it is well settled that, while an attempt to unlawfully incumber the homestead may be invalid as between the parties to the original contract and those having notice of the facts, yet that constitutional immunity will not be enforced against an innocent holder for value of the debt and lien thus created. Chamberlain v. Trammell, 61 Tex. Civ. App. 650, 131 S. W. 227; Sanger v. Brooks, 101 Tex. 115, 105 S. W. 37, and cases there cited. It is not disputed that in this instance the bank paid full value for the note and had not actual notice of the circumstances under which the lien was given, or that Martin had ever held any previous claim to the lots under a purchase from Strength. This was sufficient to make the bank an innocent purchaser for value and entitle it to claim that defense. That being true, it is immaterial that conditions may have existed which charged the appellee with notice of the homestead character at the time of his purchase. Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632; Andrews v. Robertson, 111 Wis. 334, 87 N. W. 190, 54 L. R. A. 673, 87 Am. St. Rep. 870.

[3] The appellants contend that the fact that the deed from Strength to Findley had not been recorded when the bank purchased the note was a circumstance sufficient to put it upon notice that there might be some irregularity in the chain of title, and in the absence of any record the bank as a purchaser would be charged with notice of all the facts which it might have learned by in-

quiring of Martin, who was then in possession of the premises. In Sanger v. Brooks the rule is reiterated that the purchaser of real estate, or an incumbrance thereon, is presumed to know the contents of the muniments in his chain of title, whether recorded or not. The fact that a deed is not recorded is not ordinarily a circumstance which requires a purchaser to push his inquiry concerning the title further than the deed itself. Had this been called for and examined at the time of the purchase by the bank, it would have disclosed nothing tending to impeach the fairness of the transaction or validity of the lien. Assuming that the difference in the consideration expressed in the two deeds was sufficient to attract attention, it did not suggest any adverse claim on the part of Martin, or indicate that he had ever held any previous ownership or possessed any equitable rights in the property. In Sanger v. Brooks the suit was to cancel certain conveyances and promissory notes alleged to be incumbrances upon the homestead. The facts of that case show that Brooks was indebted to Odom, and in order to secure that debt the parties resorted to the following scheme: Brooks and wife conveyed the property to Odom, and the latter on the same day reconveyed it to Brooks, the deed reciting the retention of a vendor's lien to secure a balance due of the purchase price. The two conveyances constituted a simulated transaction for the purpose of fixing a lien upon the homestead. The note was afterwards transferred to Sanger. Chief Justice Gaines held that the character of the two conveyances, occurring on the same day and being of record, was sufficient to put Sanger Bros. upon notice that it was a device to evade the law. No such circumstances exist in this suit.

[4] In a separate answer Mrs. Martin asserted rights by reason of the fact that her separate funds had been used by her husband in making the payments to Strength under the original purchase. Those payments gave her at most only a separate equity in the land, with Martin holding the legal title in trust for her. That claim, like any other estate held in trust, might be defeated through an unauthorized sale to a bona fide purchaser for value. The fact that her equity was not susceptible of record does not alter the situation. Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Sanborn v. Schuler, 82 Tex. 117, 23 S. W. 642; Daniel v. Mason, 90 Tex. 244, 38 S. W. 162, 59 Am. St. Rep. 815.

The judgment of the district court will be affirmed.

### On Motion for Rehearing.

[5] It is insisted in appellants' motion for rehearing that their possession of the premises at the time the note was assigned by Findley to the bank was sufficient to put the latter upon notice of their homestead claim. That may be true; but the homestead claim was not inconsistent with an outstanding vendor's lien for the purchase money which the deed from Findley to Martin disclosed. The rule applicable to such a situation is well stated in the following cases: New England Safe Deposit & Trust Co. v. Harrell et al., 39 S. W. 142; Sparks v. Loan Agency, 19 S. W. 258.

The motion is overruled.