### ASTIN v. MARTIN et al.   (No. 7014.)*

(Court of Civil Appeals of Texas. Austin. Oct. 27, 1926. Rehearing Denied Dec. 22, 1926. Appellant's Second Motion for Rehearing Overruled with Modification Jan. 12, 1927.)

1. Vendor and purchaser ⬤⟾232(13)—Exclusive possession of land by son after removal by mother carried notice that he held in some right of his own.

So long as son had joint possession of land with mother his possession was not notice of unrecorded title inconsistent with recorded title of mother, but his possession after mother's removal from land carried notice that he held in some right of his own.

2. Vendor and purchaser ⬤⟾232(9)—Possession of tenant after termination of lease held as matter of law to put prospective purchaser on notice of after-acquired unrecorded conveyance.

Possession of one originally entering under verbal lease as tenant at will after expiration of tenancy held notice which as matter of law puts prospective purchaser or judgment creditor on notice of tenant's after-acquired unrecorded conveyance.

3. Vendor and purchaser ⬤⟾232(1)—Generally possession carries with it notice of rights and property claimed by possessor.

Generally, possession carries with it notice of rights in property claimed by possessor and requires those dealing with property to make such inquiry as ordinarily prudent person would make.

4. Vendor and purchaser ⬤⟾232(1)—Exception to rule that possession of property is notice is where possessor has executed conveyance inconsistent with his claim.

Exception to rule that possession carries with it notice of rights in property claimed by possessor is where party in possession has executed conveyance or caused instrument to be recorded which if accepted as evidence of rights is inconsistent with claim otherwise asserted.

5. Vendor and purchaser ⬤⟾232(1)—Presumption of continuance of status held inapplicable where stranger is dealing with land. record title of which is in one person and possession in another.

Rule that one may presume continuance of status until knowledge of change thereof is brought home to him is inapplicable to case where stranger deals with title to land, record title of which is in one person and possession in another.

6. Vendor and purchaser ⬤⟾232(9)—Generally tenant's possession carries notice of terms of tenancy or rights of possession.

Generally tenant's possession carries with it full notice of all terms of tenancy or other rights of his possession.

7. Estoppel ⬤⟾118—Evidence held to raise issue as to whether defendant was estopped from setting up unrecorded deed as against purchaser at judicial sale.

In suit to recover land, evidence held to raise issue as to whether defendant was estopped from setting up unrecorded deed as against purchaser at judicial sale.

8. Appeal and error ⬤⟾927(7)—On instructed verdict for defendant, plaintiff's testimony must be regarded as true on appeal.

Where question arises on instructed verdict for defendant, testimony of plaintiff must be regarded as true on appeal.

9. Vendor and purchaser ⬤⟾244—Evidence held to warrant finding of want of notice of defendant's claim under unrecorded deed by purchaser at judicial sale after proper inquiry.

Evidence that defendant, claiming land under unrecorded deed, represented to plaintiff,

---

grantee of purchaser at judicial sale, that his mother was still owner of the property, *held* sufficient to warrant finding of want of notice of claim by plaintiff after proper inquiry.

10. Estoppel ⟐⟐117—Vendor and purchaser ⟐⟐243—Evidence of survey in which land claimed was situated held admissible on issues of estoppel and whether plaintiff made proper inquiry of defendant's claim.

In suit to recover land which plaintiff claimed under judicial sale and defendant under unrecorded deed, where defendant made separate renditions for taxes for himself and did not include land in question, evidence of survey in which land was situated *held* admissible on issues of estoppel and proper inquiry by plaintiff.

11. Vendor and purchaser ⟐⟐243—Testimony of judgment creditor's examination of tax rolls and record before levy held material on purchaser's claim of lack of notice of defendant's unrecorded deed.

In suit for land, where plaintiff claimed under execution sale and defendant under unrecorded deed from judgment debtor, testimony that judgment creditor's attorney examined tax rolls and records before levy and had no notice of defendant's claim *held* material in connection with plaintiff's testimony that he consulted with bank's attorney before purchasing.

On Motion for Rehearing.

12. Homestead ⟐⟐217—Neither spouse can be ousted from homestead, where rights of other spouse have not been adjudicated.

Unseverable character of homestead right is such that so long as marital relation and homestead exist there can be no judgment ousting either spouse from possession, where rights of other spouse are not adjudicated.

13. Homestead ⟐⟐212—Wife is necessary party to suit for title and possession of homestead.

So long as marital relation and homestead interest exist wife is necessary party to suit for title and possession thereof.

14. Homestead ⟐⟐212—Question whether wife is necessary party in suit involving homestead depends on whether plea of homestead is in itself defense.

In suit involving community property impressed with homestead, question whether wife is necessary party in view of her homestead interest alone depends on whether plea of homestead would in itself be defense.

15. Homestead ⟐⟐110—Husband cannot defeat homestead right of wife, where legal title to property is in community.

Husband cannot by acts or words defeat homestead right of wife, where legal title impressed with homestead is in community, and party dealing with him has constructive notice of homestead character of property.

16. Homestead ⟐⟐212—Where wife's homestead was complete defense to attempt to foreclose lien, she was necessary party to suit by plaintiff claiming under execution sale.

Where homestead interest of wife would be complete defense to attempt by creditor bank to establish or foreclose lien on property under its judgment, wife was a necessary party to suit to recover land by plaintiff claiming under execution sale foreclosing abstract of judgment lien under judgment in favor of bank.

Appeal from District Court, Lee County; J. B. Price, Judge.

Suit by J. D. Astin against A. Martin and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Thos. W. Thompson, of Giddings, for appellant.

W. A. Morrison, of Cameron, and John H. Tate, of Giddings, for appellees.

McCLENDON, C. J. Suit by J. D. Astin, appellant, against A. Martin and others, appellees, to recover 138 acres of land in Lee county. Trial to jury. Judgment for appellees on directed verdict.

M. N. Martin, the mother of appellee A. Martin, is common source of title. Appellant claims under an execution sale foreclosing an abstract of judgment lien under a judgment in favor of Lee County State Bank of Lexington, Tex., against M. N. Martin. The judgment was recovered April 20, 1923. An abstract of judgment was recorded and indexed in Lee county on April 26, 1923. Execution issued September 4, 1923, levied on the same date, and the land was sold October 2, 1923, to one Shaffer, who conveyed it to appellant. The record shows that Shaffer in fact purchased for appellant.

Appellee claims under a deed from M. N. Martin, executed October 17, 1921, but not recorded until September 13, 1923.

Two important questions are presented by the appeal: First, whether the possession of A. Martin on the date the judgment lien attached was notice to the bank of his claim of title under the unrecorded deed from his mother; and, second, whether acts and representations of A. Martin to appellant prior to the latter's purchase at execution sale were sufficient to raise the issue of estoppel against A. Martin to assert his title.

The evidence with reference to A. Martin's possession of the property is without material controversy. The land in question was part of original holdings of A. Martin's father, W. H. Martin, aggregating 480 acres, the community property of W. H. and M. N. Martin. W. H. Martin died intestate prior to 1913, and the community property passed, one half to M. N. Martin, and the other half to A. Martin and three other children of W. H. and M. N. Martin. There was a partition among the heirs, by which 240 acres in the northern portion of these holdings was set aside to M. N. Martin, and four 60-acre tracts in the southern portion to the four children in severalty. M. N. Martin's 240 acres consisted of two adjoining tracts out of two

separate surveys. The northern tract, being that in suit, was in the Moran survey, and known as the Bounds tract, containing 138 acres. The. southern tract, containing 102 acres, was in the Peavyhouse survey. Originally there had been a line fence between the two tracts, but this was taken down many years ago and the whole was under one inclosure. The Bounds tract appears to have been better land and was cultivated in the eastern portion. There was also some cultivation in the southern tract. The old home place of W. H. and M. N. Martin was on the Peavyhouse tract, some 200 or 300 yards south of the Bounds line. A. Martin lived with his parents up to the time of his father's death, and afterwards he lived with his mother and cultivated or assisted in cultivating or in renting the land. He married in August, 1913, or 1914, and moved into the home place with his mother. From that time up to the year 1921 he lived on the place and cultivated the land as a tenant, except that he moved away to Thorndale for one year and for two years he lived in the Rio Grande Valley. During part of this time he lived in the house with his mother and part of the time in a small house in the eastern portion of the Peavyhouse tract. On returning from the Rio Grande Valley he moved into a little house near the home place, where he resided until the spring of 1921, when he moved this little house onto his own 60-acre tract, where he and his family lived until December, 1921, or January, 1922. During the year 1921 he was a tenant of his mother for the 138 acres, cultivating a portion of the land. When he moved back onto the Peavyhouse tract in the winter of 1921-22, he first moved into the house with his mother, who remained there a short while, and then moved out and went to live with another son. From that time on she did not live on any of the property, but made occasional visits to A. Martin, who remained on the land from the winter of 1921-22, continuously residing on the Peavyhouse tract with his family, using and cultivating both tracts. The deed from Mrs. Martin to A. Martin conveyed her entire 240 acres. The evidence is clear that up to and at the time Mrs. Martin deeded A. Martin the land, the latter was tenant of the former, either from year to year or at will, and he was not then living on any of the property, but moved onto the Peavyhouse as above stated shortly thereafter. The record does not show that either the bank, Shaffer, or appellant had any knowledge or intimation of the existence of Mrs. Martin's deed, nor any notice thereof further than that which would be imputed from A. Martin's possession, or the recording of that deed on September 13, 1923, which was after the execution was levied and the property advertised for sale.

[1] Appellee contends that the whole 240 acres should be regarded as a unit, and that, since the character of occupancy of A. Martin changed from one jointly with his mother to one of himself alone after the deed to him was executed and before the judgment lien attached, his possession should be held to carry notice of his deed. We are inclined to accept this view. As long as Mrs. Martin and A. Martin had joint possession of the property, the possession of the latter would not give notice of an unrecorded title inconsistent with the recorded title of the former. Paris Grocery Co. v. Burks, 101 Tex. 106, 105 S. W. 174; 39 Cyc. 1760. When Mrs. Martin moved off the land, A. Martin's possession became exclusive, and from that date a new character of possession existed, which would carry notice that A. Martin was holding, not in subordination to the title of a joint possessor, but in some right of his own. A purchaser, we think, would be put upon inquiry of what that right was, and could not longer rely upon the assumption that it was in subordination to that of the record owner, who had surrendered to A. Martin the exclusive possession of the property.

[2] Appellant contends, however, that the 138-acre tract, being out of a different survey from the home tract, must be regarded as a separate unit. Under this view the case presents the question whether the possession of one who originally enters under verbal lease as a tenant at will or from year to year, which possession is continued after the land has been conveyed to the tenant and the tenancy has expired by reason of the termination of the term of the lease, is such notice as will as a matter of law put a prospective purchaser or judgment creditor on notice of such after-acquired unrecorded conveyance. We have not found that this particular question has been determined in this state, but have reached the conclusion that on principle, deduced from the adjudicated cases, it should be held that such possession in law constitutes such notice.

[3, 4] The general rule, which needs only to be stated, is that possession carries with it notice of the rights in the property claimed by the possessor, and requires those dealing with the property to make such inquiry to ascertain those rights as an ordinarily prudent person would make under the same or similar circumstances. The exceptions to this rule are where the party in possession has executed some conveyance, or has caused some instrument to be placed of record, which if accepted as evidence of his rights would be inconsistent with the claim he otherwise asserts. See Eylar v. Eylar, 60 Tex. 315; Loan Co. v. Sugg (Tex. Civ. App.) 237 S. W. 955, and cases there cited.

[5] The rule contended for by appellant is that where one originally enters as tenant of the record owner his continued possession will be referred to his original entry, and in order to put judgment creditors on notice that the tenancy has terminated and the

tenant has acquired a title inconsistent with the tenancy, notice of such fact must be brought home to the purchaser or creditor independently of the mere continued possession of the tenant. The rule contended for could be based only upon the proposition that one has the right to presume the continuance of a status until knowledge or notice of change of such status is brought home to him in some way known to the law, and that this presumption would continue indefinitely. There are situations in which this presumption is applied, but we do not think it has proper application to a case where a stranger is dealing with title to land, the record title to which is in one person and the possession in another, there being no special circumstances requiring that the rule be invoked.

[6] The general rule is that the tenant's possession carries with it full notice of all of the terms of his tenancy or other rights of possession. Thus it has been held that where a tenant is in possession under an unrecorded written lease for a term of years with option to purchase at expiration of term, his possession gives notice both of the tenancy and the option. Wilson v. Clemmons (Tex. Civ. App.) 170 S. W. 855. Where a tenant in possession under verbal lease for a year made verbal lease for the following year, his possession during the first year's tenancy was notice of his lease contract for the subsequent year. Jackson v. Walls (Tex. Civ. App.) 187 S. W. 676 (writ of error refused). Where a tenant in possession under written lease which by mutual mistake gave wrong date of beginning and termination of the term, it was held that possession gave notice of the real transaction between the parties. Gilroy v. Rowley (Tex. Civ. App.) 210 S. W. 623.

In the case of Mainwarring v. Templeman, 51 Tex. 205, opinion by Judge Gould, it was held that where a tenant went into possession under the owner who thereafter conveyed to a third party to whom the tenant in turn attorned, neither the conveyance nor subsequent attornment being of record, the possession of the tenant gave notice of the attornment and consequently of the title of his landlord.

The case here presented comes clearly, we think, within the reasoning of the rule announced in the Mainwarring Case. There, there had been no change whatever in the character of the tenant's possession. He entered as a tenant of Atchison, who was the record owner of the land. There was nothing of record showing that there was any subsequent change in the title to the property, or in the character in which the tenant held possession. Atchison, the owner, afterward, conveyed to Mainwarring, to whom the tenant then attorned, but there was nothing of record to show this change in the status

of the title to the property. One who had knowledge that the tenant held his possession under Atchison had no greater or different means of ascertaining that there had been a change in ownership or in tenancy than did the bank in the present case. If the bank had the right to rely on the fact that A. Martin originally entered upon the property as a tenant of his mother under a verbal lease, which at most extended from year to year, and to presume that such tenancy was thereafter continued, and was not required to make inquiry of the party in possession, by what process of reasoning should it be held that the bank would have been put upon notice of a change in A. Martin's status, if instead of a deed from Mrs. Martin to A. Martin there had been a deed from Mrs. Martin to a third party and attornment by A. Martin to the latter, of which there was no record and no knowledge or notice to the bank other than the mere fact of A. Martin's continued possession of the property. We can see no distinction in principle between the two cases, nor do we see any reason for extending the exception to the rule that possession is notice of whatever rights the possessor claims in the property, by the mere fact that there was an original entry under verbal lease, which according to its terms had long since expired. Here as in the Mainwarring Case we think the proper rule is that:

"The purchaser should not be excused from inquiry unless there be something more to mislead him than his own assumption that parties occupy under the same right as formerly."

Upon this phase of the case appellant relies upon the following cases: Smith v. Miller, 63 Tex. 72; Brown v. Rowland, 11 Tex. Civ. App. 648, 33 S. W. 273; Hamilton v. Ingram (Tex. Civ. App.) 35 S. W. 748; Lumber Co. v. Milburn (Tex. Civ. App.) 107 S. W. 1161; and Kelly v. Blakeney (Tex. Civ. App.) 172 S. W. 770.

Smith v. Miller presents the following state of facts: Miller was in possession under claim of title by verbal sale from Collins, who later conveyed to Whitsett. Miller compromised his claim and attorned to Whitsett. Smith purchased from Whitsett with knowledge of Miller's tenancy, and Miller thereafter attorned to Smith. Miller contended, to quote from the opinion:

"That he took these leases by mistake, and in ignorance of his rights, and is therefore not estopped by them. Be it so. Let it be admitted that he may still dispute the claim of Mrs. Smith. Still that does not affect the question of notice. Mrs. Smith did not know that he was acting under a mistake, and if any person must suffer by it he must be that person. He cannot claim that his possession must still be notice to her of a claim which he would have persisted in asserting but for the mistake. Under the circumstances, our opinion is that nothing short of an open, unequivocal renunciation of the tenan-

cy, brought home to the knowledge of Mrs. Smith before her purchase, would be sufficient."

It is quite apparent that the situation there presented presents no analogy to that at bar. Miller was claiming, not under a title acquired from his landlord after his tenancy began, but under a previously acquired title which he had abandoned when he became a tenant.

In Hamilton v. Ingram, Freeman had recovered the land from Ingram, and thereafter Ingram had taken a written lease from Freeman, which was placed of record. Freeman later sold to Hamilton. In a suit by Hamilton against Ingram for the land the latter impleaded Freeman and sought to set aside the judgment on the ground of fraud. The case clearly is practically on all fours with Smith v. Miller.

In Kelly v. Blakeney there was a written lease of record, the term of which had not expired, and the title the tenant asserted was not from the landlord but from a third party. It may be noted that the Supreme Court later reversed the judgment in that case, but upon another question. 212 S. W. 651. The opinion of the Court of Civil Appeals can be rested upon the principle of estoppel of the tenant, in the absence of notice to assert a title inconsistent with one he has placed of record.

In Brown v. Rowland and Lumber Co. v. Milburn, the doctrine is announced that a tenant's possession is not notice of his claim, acquired after the tenancy began, to buildings which became part of the realty. It may be difficult to reconcile this holding with that in some of the cases above noted. A like difficulty may be presented by the holdings in Smith v. Miller and Hamilton v. Ingram on the one hand, and Gilroy v. Rowley on the other. However that may be, we do not regard any of the cases cited by appellant as authority for his contention in this case.

In Wade on the Law of Notice (1886) (2d Ed.) § 303, it is said:

"When one who held possession as lessee, and after the expiration of the term remained a tenant at sufferance for a short time and then purchased the fee, it was decided that such possession would be referred to the original tenancy under which it commenced, and would not stand for notice of the title under which she held at the date of the subsequent purchase"—citing cases from Mississippi, Massachusetts, and Pennsylvania.

The author, in section 304, after discussing the Mississippi rule, adds:

"Other courts decide that the notice inferred from possession shall be of such title as the possessor had at the time of the subsequent purchase, limiting the application of the principle to cases where the tenant in possession has not estopped himself from relying upon his possession as notice, by placing upon record a title inconsistent with that claimed, or a different title which is perfectly consistent with his possession. In the latter event, his possession will be referred to his record title."

Reverting again to the cases supporting the text of section 303, the author concludes:

"There seems to be a difference of principle upon which these cases are decided from that governing those elsewhere determined, which we will not attempt to reconcile."

We have not attempted any research upon this subject in the decisions of other states, for, as stated in the Mainwarring Case:

"It is to be remarked that the registration statutes in different states are not uniform. * * * But under our statute the rule has become settled, that possession, either in person or by tenant, is equivalent to registration."

[7] The evidence with reference to the question of estoppel is substantially as follows: The bank's judgment was against Mrs. Martin and appellant. The execution was levied upon the 138-acre tract in question and another tract of 80 acres as the property of Mrs. Martin, and both tracts were advertised to be so sold. Notice of the sale was mailed by the sheriff to A. Martin. Appellant was a neighbor of A. Martin, had lived in the community a long time, and at one time had been a tenant of a portion of the M. N. Martin lands, and knew in a general way of the partition of A. Martin's father's estate. He was acquainted with the two tracts that were set aside to Mrs. Martin in the partition, and knew that A. Martin had been living on the land under some arrangement with his mother. He testified in substance that A. Martin came to see him on the Sunday night before the property was sold, which would have been September 30, 1923; that was the first time he knew anything about "that part of the land being tied up." He did not know who owned or claimed it. A. Martin told him that the land was to be sold on Tuesday. Without setting out his testimony in detail we think it clearly sufficient to support a finding that A. Martin induced him to bid on the land in suit as the property of M. N. Martin, and he acted upon what A. Martin had said to him.

[8] A. Martin admitted having had the conversation with appellant about his purchasing some of the property levied upon, but stated that he had reference to the 80-acre tract, and, further, that he was only joking. We do not deem it important to detail his testimony since the question here arises upon an instructed verdict and for that purpose the testimony of appellant must be regarded as true. We think this testimony clearly raised the issue of estoppel. Johnson v. Hamilton, 36 Tex. 270; Nichols v. Crosby, 87 Tex. 443; 29 S. W. 380.

In the Crosby Case, above, Judge Denman thus restates the essential elements of estoppel as follows: (1) A false representation of a material fact; (2) such representation must have been made with knowledge of such facts; (3) the party to whom the representation was made must have been ignorant of the truth of the matter; (4) it must have been made with intent that it be acted upon; (5) it must have been acted upon.

[9] We think appellant's testimony was sufficient to warrant a finding of the existence of each of these elements, and the trial court was therefore in error in directing a verdict for defendants. In this connection we also think the testimony was sufficient to warrant a finding of want of notice on appellant's part after proper inquiry.

Independently, therefore, of the question of estoppel and charging a prospective purchaser under the execution with the notice which the law would impute from A. Martin's possession, it is to be borne in mind that such notice only required reasonable inquiry with reference to the character of A. Martin's possession. Appellant's testimony was clearly sufficient, we think, to warrant a finding that A. Martin represented to Astin that his mother was still the owner of the property. Under the circumstances there was no duty on appellant to inquire further. The only other questions in the case relate to the exclusion of testimony.

[10] It was in evidence that for the years 1922 and 1923, Mrs. Martin's tax assessments had been made by A. Martin. The 1923 assessment showed 138 acres in the M. Moore survey. Appellant offered to show by the tax assessor that this was an error and the assessment should have shown that the 138 acres was in the Moran survey. This evidence was excluded. We think the testimony was admissible as a circumstance in connection with the other evidence in the case upon the issue of estoppel, and the issue of proper inquiry on the part of appellant, it being also shown that A. Martin made separate renditions for himself and did not include the 138 acres in question in his rendition at any time. In this connection it should be noted that in Mrs. Martin's 1923 assessment there appears 60 acres in the E. Peavyhouse which has a line marked through it and notation below, "'Sold to A. Martin."

[11] Other testimony excluded was to the effect that the bank's attorney examined the tax rolls and the records before levying upon the property and that the bank did not have any other notice of A. Martin's claim. This testimony was material in connection with that of appellant to the effect that he consulted the bank's attorney before making the purchase. Evidence that the bank officials had no knowledge of A. Martin's deed was immaterial.

For the errors pointed out, the trial court's judgment is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

[12, 13] Both parties have moved for rehearing. Upon the original hearing appellees contended that, since the property in question was the homestead of A. Martin and wife, the fraud or misrepresentation of A. Martin could not be urged to defeat Mrs. Martin's homestead interest. This proposition is again urged by appellees on rehearing. Mrs. Martin was not a party to the suit, and as the judgment in the case could not bind her individual rights in so far as she was not represented in the suit by her husband, we did not consider this question. We have reached the conclusion, however, that the unseverable character of the homestead right in husband and wife is such that so long as the marital relation and the homestead interest exist there could be no judgment which would oust either spouse from possession of the homestead, where the rights of the other spouse had not been adjudicated. The wife in such instance would be a necessary party to a suit for title and possession of the homestead property. The question of necessary parties has not been briefed.

We have reached the conclusion from our independent investigation that in the present case the wife is a necessary party to the action, and the cause must be remanded not only for the reasons set forth in our original opinion, but in order that she may be brought in and the whole homestead question as to both spouses adjudicated. It becomes necessary, therefore, for us to consider the homestead question.

[14] It is now well settled that in a suit involving the title to or a lien upon community property impressed with the homestead character, the question whether the wife is a necessary party to the action by virtue of her homestead interest alone depends upon whether the plea of homestead would in itself be a defense to the suit. The homestead interest must necessarily attach to some title or interest in the property claimed as homestead, and will stand or fall as that title or interest stands or falls. It has accordingly been held that where the question is one of title by which the homestead property was acquired, or concerns an asserted lien which if established would be superior to the homestead right, the wife is not a necessary party to the action, and a judgment against the husband is binding upon her homestead interest. Jergens v. Schiele, 61 Tex. 255; San Antonio v. Berry, 92 Tex. 319, 48 S. W. 496; Bean v. Brownwood (Tex. Civ. App.) 43 S. W. 1036; Coal Co. v. Henry (Tex. Civ. App.) 47 S. W. 281 (writ refused); Collins v. Ferguson, 22 Tex. Civ. App. 552, 56 S. W. 225 (writ refused); Brown v. Humphrey, 43

Tex. Civ. App. 23, 95 S. W. 23; Breath v. Flowers, 43 Tex. Civ. App. 516, 95 S. W. 26; Gillaspie v. Huntsville (Tex. Civ. App.) 151 S. W. 1114; Childress v. Robinson (Tex. Civ. App.) 161 S. W. 78 (writ refused); Mitchell v. Robinson (Tex. Civ. App.) 162 S. W. 443 (writ refused); Nunez v. McElroy (Tex. Civ. App.) 174 S. W. 829; Davis v. Cox (Tex. Civ. App.) 176 S. W. 931; Brown v. Foster (Tex. Civ. App.) 178 S. W. 787 (writ refused); Cooley v. Miller (Tex. Com. App.) 228 S. W. 1085; Wyss v. Bookman (Tex. Sup.) 235 S. W. 567; Hanes v. Hanes (Tex. Com. App.) 239 S. W. 190; Robertson v. Lee (Tex. Com. App.) 249 S. W. 217.

[15] Appellant contends that the acts relied upon by the husband as establishing estoppel are binding upon the wife, citing Ranney v. Miller, 51 Tex. 263; Sparks v. Loan Agency (Tex. Sup.) 19 S. W. 256; Trust Co. v. Harrell (Tex. Civ. App.) 39 S. W. 142; Martin v. Granger (Tex. Civ. App.) 204 S. W. 666. The principles applied in those cases are not applicable here. There the title upon which the homestead rested was an equitable one, or the lien, the validity of which was brought in question, appeared in the chain of title upon which the homestead right depended. Whereas here the legal title to the homestead property was vested in the community by a deed which at the time the property was sold under execution had been placed of record. The case therefore presents the question whether the husband by acts or words can defeat the homestead right of the wife where the legal title to the property impressed with the homestead character is in the community and the party with whom the husband deals and who deals with the homestead property has constructive notice by registration of the existence of that legal title and consequently of the homestead character of the property. This question we think should be answered in the negative. See Medearis v. Buratti (Tex. Civ. App.) 275 S. W. 617, and authorities there cited.

[16] If the deed to A. Martin had not been placed of record until after the execution sale a different question would be presented. In that case the only notice to a prospective purchaser would be that which would follow from possession by Martin and wife. As held in our original opinion, that possession was sufficient under the facts of this case to put a prospective purchaser on inquiry. It may be that so long as the deed was not recorded inquiry of the husband alone was necessary. If so the representations claimed by appellant to have been made by A. Martin would be sufficient to meet the requirements of inquiry. But that is not the case here. No abstract of judgment lien attached, for the reason that the judgment creditor was put upon inquiry by the possession of Martin and wife and no such inquiry was made at or prior to the time the abstract of judgment was recorded and indexed. The rights of Astin, therefore, must depend entirely upon whether at the time he made his bid and paid the price thereof upon execution sale he was in the attitude of an innocent purchaser. Prior to that time, in fact prior to the representations made to him by A. Martin, the deed under which Martin and wife asserted title and upon which Mrs. Martin's homestead interest rested was placed of record and constituted constructive notice to all subsequent purchasers. At the time this deed was filed and recorded no rights or liens had accrued which would be superior to the title conveyed by that deed or the homestead rights attached to the title so conveyed. It is clear, therefore, that the homestead interest of the wife would be a complete defense to any attempt by the creditor bank, or those claiming under it, to fix, establish, or foreclose a lien upon the property by virtue of the bank's judgment. Under the above authorities, therefore, we think clearly the wife was a necessary party to the suit.

In order for plaintiff to recover it will be necessary to establish acts or representations on the part of A. Martin sufficient to constitute estoppel and participation therein by the wife in such manner as to make her a party thereto.

Both motions are overruled, and the trial court's judgment is reversed and the cause remanded for further proceedings in accordance with our original opinion and with this opinion.

Motions overruled.