**ROBERTSON et ux. v. LEE et al.***
(No. 322–3666.)

(Commission of Appeals of Texas, Section B. Feb. 28, 1923.)

**1. Exceptions, bill of** ⊜⇒40(4) — **Trial judge empowered to enter extension under which bills of exception filed.**

The trial court has power, at the time he orders bills of exception filed, to enter an extension order, which would authorize their filing, under Rev. St. art. 2073.

**2. Exceptions, bill of** ⊜⇒40(1)—**Bills of exception, containing order that they be filed as part of the record, tantamount to extension of time for filing.**

Where bills of exception contained an order to the clerk that they be filed as part of the record, such orders were in themselves tantamount to an order extending the time for filing, and a substantial compliance with the statute, and a formal order extending the time would have added nothing to the substance of what the judge had already done, and would have been an act of supererogation.

**3. Trespass to try title** ⊜⇒26—**By one plaintiff in the name of other owners held proper.**

In an action of trespass to try title and for the rental value of the property as damages, brought by one for himself and as trustee for his coplaintiff, but in the name of all the plaintiffs, alleging that named plaintiff owned four-fifths of the property sued for, and the remaining plaintiffs one-fifth, was tantamount to a declaration of trust in their favor, and would authorize a recovery by them upon a showing of title in the named plaintiff, and such suit was properly brought in the name of the remaining plaintiffs, and their right to recover upon showing of title in the named plaintiff could not be questioned, in the absence of a showing of want of authority of the attorneys filing the petition to bring the suit, under Rev. St. art. 335.

**4. Homestead** ⊜⇒118(3)—**Husband may convey to trustee to secure liens superior to homestead rights without joinder of wife.**

A deed to a homestead, placing the legal title in a trustee to secure liens held by him which were superior to the homestead rights, may be executed by the husband alone, without the joinder of his wife.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by W. B. Lee and others against William F. Robertson and wife. From a judgment of the Court of Civil Appeals affirming a judgment for plaintiffs (230 S. W. 730), defendants bring error. Affirmed.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied April 18, 1923.

Wm. F. Robertson, J. G. Wilson, and Rasbury, Adams, Stennis & Harrell, all of Dallas, for plaintiffs in error.

Burgess, Burgess, Chrestman & Brundridge, of Dallas, for defendants in error.

McCLENDON, P. J. W. B. Lee and Alexander, Cornelia and Samuel Sanger (the last three composing the copartnership of Sanger Bros.) brought this suit against William F. Robertson and wife, Annie D. Robertson, to recover a house and lot in Dallas, Tex. The suit was in the usual form of trespass to try title and for the rental value of the property as damages. Defendants answered by plea of not guilty. On the same day the suit was filed plaintiffs sequestered the property, and the defendants replevied by giving the bond required by statute. The trial was to the court, and resulted in judgment for plaintiffs against defendants for the property and against defendants and their sureties upon the replevin bond for $787.50 rentals. The Court of Civil Appeals affirmed this judgment. 230 S. W. 730.

The record contains four bills of exceptions taken by defendants to rulings of the trial court. One of these bills relates to the overruling of defendants' second motion for continuance, which was predicated upon the illness of Mrs. Robertson and her consequent inability to appear as a witness. The other three relate to admission in evidence of the three written instruments, referred to below, which constituted the evidence of plaintiffs' title. These bills of exceptions were stricken from the record by the Court of Civil Appeals on the ground that they were filed after the time allowed by order of the court and without any extension of time by further order. The court adjourned for the term on January 10, 1920, and an order was entered, authorizing bills of exceptions to be filed within 60 days from that date. Petition and bond for writ of error were filed January 31, 1920, and the several defendants in error were served with citation in error or accepted service at various dates between that time and May 12, 1920, when the last acceptance of service was had. The bills of exceptions were filed June 9, the record applied for June 10, and filed in the Court of Civil Appeals July 30, 1920. Each of the bills of exceptions contains the following statement over the signature of the trial judge:

"The foregoing bill of exceptions No. ——, having been reduced to writing by counsel for the defendants, and having been presented to the undersigned judge of said court for allowance and signature, and having been by me submitted to adverse counsel, and found by them to be correct, and having been found by me to be correct, is hereby allowed, approved, and ordered filed by the clerk of this court as a part of the record in this case. This the 9th day of June, A. D. 1920."

In opposition to the motion to strike out these bills, plaintiffs in error filed an affi-davit, which was not controverted, alleging, in substance, that on account of illness of the trial judge they could not earlier obtain his consideration of the bills, and that the special judge who was holding court in his stead declined to made any extension order in the regular judge's absence.

[1] The trial judge had the power, at the time he ordered the bills filed, to enter an extension order, which would authorize their filing. R. S. art. 2073. But it is contended that in the absence of such order the bills were filed too late. To sustain this contention would, in our opinion, be out of harmony with the spirit of the decisions of our Supreme Court, which have uniformly given a liberal construction to rules and statutes governing matters of procedure, requiring only that they be substantially complied with. Stephens v. Herron, 99 Tex. 63, 87 S. W. 326; Hamill v. Samuels, 104 Tex. 46, 133 S. W. 419.

[2] Each of the bills contained an order to the clerk that it be filed as a part of the record in the case. These orders were in themselves tantamount to an order extending the time for filing, and substantially met every requirement of the statute. A formal order extending the time would have added nothing to the substance of what the judge had already done, and would have been an act of supererogation. Its absence affected no right or interest of any of the parties, and to require it could be defended only on highly technical grounds. We think the Court of Civil Appeals was in error in striking out the bills.

The defendants offered no evidence upon the trial, and plaintiffs adduced the following in support of their asserted title:

(1) A deed dated April 3, 1919, by Maurice D. Gano, as trustee, conveying the property in question to plaintiff Lee for a recited consideration of $300 cash. This deed recited that Gano was trustee in a certain deed of trust executed July 3, 1913, in which B. G. Howard and wife conveyed the property to him in trust to secure certain second lien notes on the property; there being a first lien of $4,500. It recited payment of some of the notes and default in others, for which and for certain payments by the junior incumbrancers on first lien interest coupons and insurance the property was advertised and sold to Lee. This deed was objected to on the ground that it was incompetent, irrelevant, and immaterial, and did not show title out of a common source.

(2) A written instrument executed, but not acknowledged, by the defendants, and executed and acknowledged by Lee, dated May 15, 1917, which recited that the trustee's deed was "hereby referred to and made a part hereof"; that "said W. B. Lee, under and by virtue of said sale, became the sole and unconditional owner of said property"; that "the validity of said sale has never been ques-

tioned, but, on the contrary, is hereby expressly recognized, notwithstanding possession of said property has never been surrendered." The instrument provided that, in consideration of $180 paid, defendants became the tenants of Lee for a period of three months from April 3 to July 3, 1920, and defendants were given the option to purchase the property at any time during such tenancy for a gross consideration of $6,839.15, with interest thereon at 8 per cent. from May 1, 1917, defendants to assume the first mortgage, the amount of which was to be deducted from the gross price.

(3) An instrument dated October 30, 1918, executed by Lee and defendant W. F. Robertson, which gave the latter the exclusive right to sell the property at any time before January 3, 1919, and to Lee the exclusive power to sell from that date up to February 2, 1919. In case of sale during either period, Lee was to be relieved of the first lien obligations, and was to receive a stipulated amount, which covered his debt, interest, taxes, etc., and Robertson was to receive the balance. It was recited that the property was then rented to one Middleton at $110 per month, and the rent paid up to December 2, 1918, after which time the rentals were to be paid to Lee. Robertson was also to pay Lee $60 as rental up to December 3, 1918. These rentals were to be credited on the amount Lee was to receive, in case a sale was effected. The instrument further recited that Lee "became the owner and holder" of the property, "and is now the legal owner and holder thereof." It also provided that Robertson and wife were to execute and place in escrow a special warranty deed, conveying the property to Lee to be delivered to him upon the sale of the property, or on February 2, 1919, in case no sale was made. Defendants objected to the last two instruments on the grounds that they were incompetent, irrelevant, and immaterial, were not properly acknowledged, and related to the homestead of defendants.

The motion for continuance alleged that Mrs. Robertson would testify as follows:

"That at the time of the sale of the property involved in this suit and before the purchase thereof at trustee's sale by the plaintiff W. B. Lee, it was understood and agreed between said Lee, and this defendant's codefendant, that said Lee would buy in the said property at said sale, and would hold the same so that these defendants could pay the amount due him and his coplaintiff on the second lien note due and to become due on said property by installments, the payments to be made each month, and to be continued until their liens were satisfied.

"That in pursuance of said agreement these defendants continued in possession of said property, and made payments thereon in accordance with said agreement, which payments were to be credited by plaintiff upon the notes held by them, principal and interest, and in payment of the installment of interest due on the first lien note against said property, and held by Robert Ralston & Co., which payments were made in part by the plaintiff, W. B. Lee.

"That after a number of payments had been made, and while the European war was at its height, and when money matters were almost at a standstill, and it was with the greatest difficulty that money could be obtained in any reasonable quantity for any purpose, and real estate in the city of Dallas was a drug on the market, plaintiff W. B. Lee insisted that the defendants should make full payment of the balance due on the second lien note then held by plaintiff, and refused to continue to permit defendants to pay out said place by installments, in accordance with their original agreement as hereinbefore set out.

"That thereafter, on or about the 5th day of January, 1918, a further and additional agreement was made and entered into between plaintiff, W. B. Lee, and this defendant's codefendant, whereby a further continuation of the payments of the installments on said note, principal and interest, and other expenses, were to be continued, and pursuant thereto said codefendant did, on or about said last-named date, make payment to said Lee of the $60 as agreed upon, which amount was to be credited on said indebtedness, as other payments were to be credited. This last payment was made at the time a written statement was sent to plaintiff W. B. Lee by said codefendant, which said statement is now in the possession of the said W. B. Lee, and he is hereby notified to produce the same or secondary evidence of the contents of said memorandum will be offered in evidence.

"That pursuant to last agreement and understanding between the plaintiff W. B. Lee and this defendant's codefendant, payments of installment, as agreed upon, were continued until about December, 1918, at which time said plaintiff insisted again upon the full payment of the amount due on said second lien note, principal, interest, and taxes, due and past due, and in order to avoid litigation, or the surrender of the property involved in this suit, defendants were compelled to execute agreements in writing, recognizing the rights of plaintiff, which defendants did not believe to exist in fact, and signed the statements in writing in regard to the rental of said property which have been exhibited to this court."

Lee testified that before the property was sold he agreed with the Robertsons that he would buy it in to perfect his lien, and that they would have the option or privilege of paying it out on a plan to be agreed upon; that the instrument of May 15, 1917, was executed in pursuance of this agreement; that payments were made until the fall of 1917, when defendants missed one month; that he then agreed to another 90-day extension, provided they would pay the taxes, as well as the $60 per month rental; that payments were continued on that basis until August, 1918, when no payment was made, and upon investigation he found that Middleton was renting from the Robertsons at $110 per month, and had paid them the rent in advance to December 2, 1918; that it was then that the agreement of October 30, 1918, was made; that the property was vacated

by Middleton about January 1, 1919, and the keys turned over to Lee's attorney; that defendants, without his knowledge or consent, took possession early in February, 1919, and the suit was then brought and the property sequestered. He also testified that he owned four-fifths of the property, and Sanger Bros. the other one-fifth; and that he was suing in behalf of Sanger Bros. as well as himself.

If the testimony of Mrs. Robertson would not have changed the result, then clearly the action of the trial court in overruling the motion for continuance, if error, was harmless. For our present purposes we will therefore assume as true the testimony ascribed to Mrs. Robertson in the motion.

The contentions of plaintiffs in error are substantially the following:

(1) That there was no showing of title in Sanger Bros.

(2) That there was no showing of title in Lee from the sovereignty of the soil or from a common source.

(3) That the instruments of May 15, 1917, and October 30, 1918, were ineffectual to show title in Lee, because the property was homestead, and Mrs. Robertson's interest therein could not be divested except by deed privily acknowledged by her.

[3] The suit was brought, not by Lee, for himself, and as trustee for his coplaintiff, but in the name of all the plaintiffs, the petition being signed by their common counsel. The petition alleged that Lee owned four-fifths of the property sued for, and Sanger Bros. one-fifth. This was an admission by Lee of title in Sanger Bros., tantamount to a declaration of trust in their favor, and would authorize a recovery by them upon a showing of title in Lee. The suit was properly brought in the name of Sanger Bros., and their right to recover upon showing of title in Lee could not be questioned, in the absence of a showing of want of authority in the attorneys filing the petition to bring the suit. This question could only be raised by motion supported by affidavit. R. S. art. 335; Bridge v. Samuelson, 73 Tex. 522, 11 S. W. 539; Hess v. Webb (Tex. Civ. App.) 113 S. W. 623. See, also, 6 C. J. p. 635, § 135, and authorities there cited.

The instrument of May 15, 1917, which was signed both by Judge and Mrs. Robertson, and of which the trustee's deed was expressly made a part, was an acknowledgment of title in Lee as the absolute owner of the property, and clearly was sufficient as a prima facie showing of title in him. There is no intimation in the record which in any way questions the vesting of the legal title in Lee by the trustee's deed. The testimony of Mrs. Robertson confirms this position, and shows that this legal title was agreed to be held in trust to permit defendants to pay off the liens that were against the property, which appear to be, without question, superior to the homestead interest.

The instrument of May 15, 1917, was not in any sense a conveyance of the homestead required to be privily acknowledged by the wife. It was merely an admission by defendants that the trustee's deed passed the title to the property to Lee. In the absence of any evidence to the contrary or of any showing of title in defendants adverse to that conveyed by the, trustee's deed, the admission of title by defendants was sufficient to support a recovery by Lee.

[4] Assuming as true the testimony of Mrs. Robertson, the trustee's deed placed the legal title in Lee in trust to secure liens held by him which were superior to defendants' homestead rights. This being true, the husband had the right to convey the homestead in satisfaction of those liens, or to otherwise contract regarding them, without the joinder of the wife, so long as he did not act fraudulently. And the wife would not even be a necessary party in a suit to foreclose such liens. Clements v. Lacy, 51 Tex. 150; Cooley v. Miller (Tex. Com. App.) 228 S. W. 1085; Cooper v. Hinman, 235 S. W. 564; Hanes v. Hanes (Tex. Com. App.) 239 S. W. 190.

The agreement of October 30, 1918, which the husband had a legal right to make under the circumstances, placed the entire beneficial title to the property in Lee, subject to the right of the Robertsons to sell the property within the time and under the terms therein designated, and to their right to share in the proceeds if Lee should effect a sale between January 3 and February 2, 1919. If no sale were made within the time specified, then defendants would have no further interest in the property.

There is a suggestion in the written argument of plaintiffs in error that this instrument was obtained by duress. The only intimation in the record in this regard is in the motion for continuance, to the effect that—

"In order to avoid litigation, or the surrender of the property involved in this suit, defendants were compelled to execute agreements in writing, recognizing the rights of plaintiff, which defendants did not believe to exist in fact, and signed the statements in writing in regard to the rental of said property which have been exhibited to this court."

This, at most, was a threat on Lee's part to institute legal proceedings to assert his rights, which would not constitute duress. Brewing Co. v. Harlan (Tex. Com. App.) 228 S. W. 1090; Ward v. Scarborough (Tex. Com. App.) 236 S. W. 437; Trigg v. Shelton (Tex. Com. App.) 249 S. W. 209; 9 R. C. L. 722; 13 C. J. 404.

We find no material error in the trial court's rulings, and therefore conclude that its judgment and that of the Court of Civil Appeals should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.