**DANNELLEY et ux. v. BARD et al.**

No. 2368.

Court of Civil Appeals of Texas. Beaumont.

June 26, 1933.

Rehearing Denied July 19, 1933.

302

John L. Dannelley, of San Antonio, for appellants.

Thomson, Dilworth & Marshall and Hicks, Dickson, Bobbitt & Lange, all of San Antonio, for appellee.

O'QUINN, Justice.

Appellants, John L. Dannelley and his wife, Ila Dannelley, brought this suit in the district court of Webb county, Tex., against appellees, A. F. Bard, John L. Pridgen, W. D. Hicks, Walter J. Daly, O. J. Boehs, and the Aleograph Company, a corporation, for damages, general, special, and exemplary, in the sum of $290,000, alleged to have been sustained by reason of false and malicious statements and acts of appellees, made and done in pursuance of a conspiracy entered into by the appellees: (a) To wrongfully and unlawfully wrest from appellant John L. Dannelley the control of two corporations known as the "Photaudigraph Corporation" and the "Aleograph Company"; (b) to wrongfully and unlawfully compel the Photaudigraph Corporation to transfer a certain United States patent to the Aleograph Company; (c) to wrongfully and unlawfully cause appellants to lose their stock in the Photaudigraph Corporation and the Aleograph Company; and (d) to accuse, malign, and slander appellants in such manner as to blacken and besmirch their reputations and to render them contemptible in the sight of honorable persons and thereby destroy them socially.

The venue of the case was changed to the district court of Frio county, and was there tried on appellants' third amended original petition, and appellees' fourth amended original answer. When the case was called all parties announced ready for trial on the issues of law raised by the pleadings, whereupon appellees presented and urged their general demurrer and special exceptions against the petition of appellants. The court overruled appellees' general demurrer, and likewise overruled 34 of their special exceptions, but sustained 37 special exceptions, and thereupon reconsidered the general demurrer against the sufficiency of the petition of appellants left thus standing, and sustained same. Appellants refusing to further amend their petition, the court dismissed the suit. This appeal is from the judgment of dismissal.

As we have concluded that the judgment should be affirmed, though appellants' petition is quite lengthy, we set same out in full, omitting only the formal parts and the exhibits. It reads:

"First. For cause of action plaintiffs represent to the Court that heretofore, towit: On or about the 21st day of January, A. D. 1927, the plaintiff, John L. Dannelley, was President and Ila Dannelley was Secretary of the Photaudigraph Corporation, a Delaware Corporation, and that said Corporation was the owner of a certain patent right, being No. 1,494,514, issued by the United States Patent Office, covering the making and reproduction of Motion Pictures with sound synchronized therewith: The Defendant, Aleograph Company was the owner of similar and like foreign patent rights, issued on said patent as a basis in Canada, Great Britain, Germany and Australia: Said patents being numbered 243,000: 236,649: 423,047 and 424,-559, and 175,524, respectively: and that the defendants, Bard, Pridgen, Hicks and Boehs, were officers and directors and stockholders of said Aleograph Company: That on or about said day and date these plaintiffs, as officers of the Photaudigraph Corporation, under the approval and direction of the directors of said Company, made and executed with W. Harry Williams, David R. Hochreich, and the Vocafilm Corporation of America, a

license and contract to make and distribute products under said patents, copies of which license and contract are hereto attached and marked 'Exhibit A' and 'Exhibit B,' respectively, and made a part of this petition:

"That on or about the 28th day of February, 1927, the Aleograph Company, acting by and thru its legally constituted Board of Directors, by resolution approved said license and contract and accepted the same 'in whole as binding upon the Aleograph Company,' all of which is more fully set out in 'Exhibit C' attached hereto and made a part hereof. That by reason of said action on the part of the said Aleograph Company said contract became an effective and binding contract upon said Aleograph Company.

"Second. Plaintiffs further allege that The Aleograph Company owned 50,000 shares, fifty per cent of the capital stock of the Photaudigraph Corporation, on which plaintiff John L. Dannelley held a voting trust: that plaintiff John L. Dannelley owned 20,000 shares of said stock: that plaintiff, Ila Dannelley, owned 5,000 shares of said stock, and various others owned the remaining 25,000 shares. Plaintiffs were also the owners of stock in the Aleograph Company and through voting trusts and proxies John L. Dannelley was entitled to vote a majority of the stock of The Aleograph Company.

"Third. Plaintiffs further allege that on or about the 1st day of September, 1927, the defendants, Bard, Pridgen, Hicks, Daley & Boehs, acting for themselves, and The Aleograph Company, acting by and through its officers and directors, towit: Bard, Pridgen, Hicks and Boehs: made and entered into a conspiracy, agreement, or a common understanding, design or purpose, to, for their personal gain, wrongfully and unlawfully wrest from John L. Dannelley the control of both of said Companies; to wrongfully and unlawfully compel the Photaudigraph Corporation to transfer the United States Patent to the Aleograph Company; to wrongfully and unlawfully destroy and cause these plaintiffs to lose their stock in the Photaudigraph Corporation and The Aleograph Company; and further, accuse, malign and slander plaintiffs in such a manner as to so blacken and besmirch their reputations as to make them contemptible in the sight of honorable persons and thereby destroy them socially.

"Fourth. That pursuant to said conspiracy, agreement, common understanding, design or purpose, the said defendants did, on or about the 15th day of September, 1927, make and publish in New York City, New York, the following statement, towit:

" 'The contract you have (meaning Williams, Hochreich and Vocafilm, Exhibit B) is not the contract approved by us and it is not binding on us (meaning the defendants): The contract we approved contained only three or four pages and was not acknowledged before the Notary signing your contract. Another contract was substituted by Dannelley or pages taken out and put back after we had approved it.'

"That said statement was published orally by A. F. Bard, and J. L. Pridgen, by making the same to W. H. Williams, Sr., J. R. Mandelbaum and D. R. Hochreich.

"That by said allegation and statement the said defendants meant to and did charge that the plaintiff, John L. Dannelley, by substituting and delivering an agreement other than the one approved by The Aleograph Company, or by adding to the agreement approved by The Aleograph Company, had created obligations on said Aleograph Company which it had not assumed, and was guilty of the crime of forgery and/or of practising fraud on the Vocafilm, Williams, Hochreich and/or The Aleograph Company.

"Plaintiffs allege that said statements were wholly and utterly false, and known by defendants to be false when made, and were maliciously made for the purposes hereinabove alleged.

"Fifth. That the said defendants pursuant to the conspiracy, agreement, common understanding, design or purpose as alleged herein, did on or about the 15th day of September, 1927, make and publish in New York, N. Y., the following statement, towit:

" 'The contract dated January 21, 1927, is neither the contract, nor a copy of the contract which was exhibited to and approved by The Aleograph Company in San Antonio.'

"Plaintiffs allege that the contract referred to was the contract made and entered into by and between the Photaudigraph Corporation, W. Harry Williams, David R. Hochreich and the Vocafilm Corporation of America, and was the contract that had been approved and adopted by the Aleograph Company as hereinabove alleged.

"That said statement was made and published by the defendant, Bard, stating the same to W. Harry Williams, David Hochreich, and Jacob R. Mandelbaum, in New York City, N. Y. That at the time said statement was made and published the Vocafilm Corporation, of which the said W. Harry Williams and David R. Hochreich, were officers, was operating under said contract and had, as the defendants well knew, expended more than $200,000.00 by reason of said operations. That by said statement the defendants meant to and did convey to the said parties to whom the same was made, the idea that these plaintiffs, John L. Dannelley and Ila Dannelley, who had executed said contract as officers of the Photaudigraph Corporation, had executed the same without the authority or consent of The Aleograph Company to include in said contract the foreign patents, and by reason of such execution had committed the crime of forgery and/or fraud

on the Vocafilm Comporation of America, Williams, Hochreich and/or The Aleograph Company.

"Plaintiffs allege that' said statement was wholly and utterly false and known by the defendants to be false when made and was maliciously made for the purpose of carrying out the conspiracy and other matters herein alleged.

"Sixth. That pursuant to said conspiracy, agreement or common understanding, design or purpose, the said defendants did on or about the 15th day of September, 1927, by and through defendant, Bard, with defendant Pridgen present and lending sanction and support thereto, represent and declare to the said W. Harry Williams, David R. Hochreich, The Vocafilm Corporation of America, and to their attorney, Jacob R. Mandelbaum, in New York, New York, as follows, towit:

"'The contract (Exhibit B) is not binding on The Aleograph Company and' that Company and its individual stockholders will and intend to file various suits and injunctions to prevent you (Williams, Hochreich and The Vocafilm Corporation of America) from operating under said license and contract, and if you (Williams, Hochreich and The Vocafilm Corporation of America) secure a dismissal of one suit, another will be filed in some other Court by some other stockholder. The Aleograph Company has stock-holders in every State in the Union, and this procedure will be continued indefinitely in such a manner that neither you (Williams, Hochreich and The Vocafilm Corporation of America) nor the Photaudigraph Corporation will ever realize anything out of the project.'

"That by stating the contract was not binding on The Aleograph Company, defendants meant to and did convey the thought that said contract had been obtained by fraud, all of which was false and known by defendants to be false at the time made; that there existed no cause or probable cause upon which The Aleograph Company or any of its stockholders could base suit a suit; that although these facts were well known to defendants, they were not known to the said Vocafilm Corporation of America; and that said statements and representations were made for the purpose of causing litigation between said Vocafilm Corporation of America, on the one hand, and plaintiff, John L. Dannelley and The Photaudigraph Corporation on the other.

"Defendants knew that Williams and The Vocafilm Corporation of America had expended and were expending large sums of money under said license and contract and knew and intended that said parties would file suit for money so expended and for damages, against the said John L. Dannelley and the Photaudigraph Corporation, defendants well knowing that neither the said Dannelley nor the Photaudigraph Corporation had funds with which to defend such action.

"Thereafter, as was the natural, reasonable and intended consequence of defendant's unlawful acts, John L. Dannelley, personally, and as President of the Photaudigraph Corporation, was notified by the said Williams and the Vocafilm Corporation of America that unless the matter of their right to continue to operate under said license and contract was adjusted and assured to them by The Aleograph Company, they intended to and would immediately file suit against him personally and against the Photaudigraph Corporation for the amount of money expended and for damages, basing the same upon fraud and deceit as to said contract, the same being a forgery and a fraud practiced upon them.

"That these plaintiffs, believing that said Vocafilm Corporation of America, Williams and Hochreich intended to and would file such a suit, as they had a right to believe and defendants had intended they should believe, and having no funds with which to defend such a suit, and believing that the filing of such a suit would destroy all the chances of the Photaudigraph Corporation to ever realize anything out of the project, in the development of which project plaintiffs had expended large sums of their own money, as well as funds of their friends whom they had induced to invest therein, sought to learn of the defendants, Bard and Pridgen, what their demands were. The Plaintiff, John L. Dannelley, was told by the defendant, Bard, that their demands were in substance as follows: That proper and complete authority be given A. F. Bard to deal, as the representative of The Aleograph Company, directly with Williams and The Vocafilm Corporation of America, and to secure in the name of The Aleograph Company a new contract with the Vocafilm Corporation; that the Photaudigraph Corporation convey to the Aleograph Company the said United States Patent; that these were their demands and they were 'going straight on down the line' —until they got them.

"Plaintiffs fully believing, as they had a right to believe, that unless the filing of the suit by Williams, Hochreich and the Vocafilm Corporation of America could be avoided, their interests in said project, and the interests of their friends whom they had induced to invest therein, would be destroyed, and for the purpose of averting such loss, acceded to the demands of the defendants, resigned as Directors and officers of the Photaudigraph Corporation, executed to Bard a voting trust on all their stock in both the Photaudigraph Corporation and The Aleograph Company, cancelled all rights of plaintiff, John L. Dannelley, to vote the 50,000 shares of stock held by the Aleograph Company in the Photaudigraph Corporation, and plaintiff, Ila Dannelley, delivered to defendant, Pridgen, all the books, ledgers, seal and

other property in her possession as Secretary of the Photaudigraph Corporation, all of which was delivered to the said Bard and Pridgen in New York City, N. Y.

"That before delivering the above named papers and articles to the defendants named, plaintiff, John L. Dannelley, demanded of said defendants that they promise and pledge themselves to him:

"1st: That the stock-holders of the Photaudigraph Corporation be protected in their full rights according as their respective shares bore relation to the whole.

"2nd: That a written statement be given plaintiff, John L. Dannelley, covering the representations and demands made to and of him by Bard and Pridgen.

"3rd: That neither of the resignations be presented to the Directors of the Photaudigraph Corporation unless John L. Dannelley be present.

"The defendants readily agreed to said demands and assured John L. Dannelley that his demands would be scrupulously complied with, whereupon said papers, books, etc., were delivered.

"Plaintiffs further allege that the defendants, Bard and Pridgen, acting for and on behalf of their co-conspirators, and for the purpose of destroying the reputation and good name of plaintiffs, and for the purpose of harassing them and placing them in a false light before their friends and the stock-holders of said Companies, as plaintiffs fully believe and charge, failed and refused to comply with any of said promises.

"That, thereafter, the defendants, well knowing that John L. Dannelley had returned from New York City, N. Y., and was at the time in San Antonio, Texas, went, without his knowledge, to Laredo; met with the Directors of the Photaudigraph Corporation, presented said resignations, and, at the same time, when asked why John L. Dannelley was not present, the defendant, Bard, acting as spokesman for himself and his co-conspirators, stated:

"'The resignations are here and are sufficient, and I judge it would be rather embarassing for him to be present, so I judge that is the reason he is not here.'

"That said statement was made and published by stating the same orally to said Directors, towit: G. H. Winch, H. L. Jackson, Rex Shanks, R. R. Mims and Hal L. Brennan.

"Plaintiffs allege·that said statement was false, and known to be false by the defendants and was maliciously made to injure these plaintiffs and especially John L. Dannelley.

"That by said statement the defendants intended to and did charge that these plaintiffs, and especially John L. Dannelley, had committed some act of which he was ashamed and because of such shame he was not present when said resignations were presented; all of which was false and known to be false, and was made for the purpose of damaging —and did damage—these plaintiffs, and especially the plaintiff, John L. Dannelley.

"Seventh. Plaintiffs further·alleged that the defendants, by and through defendant, Bard, pursuant to said conspiracy, agreement, common understanding, design or purpose, did on or about 1st day of October, 1927, in Webb Co. Texas, make and publish the following statement, towit:

"'The contract put over in New ;York (meaning the contract set out in Exhibit B) is not the contract put over on you (meaning the Directors of the Photaudigraph Corporation) and us (meaning the defendants) in San Antonio. If we were not friends of Dannelley we would prosecute him for that and we could prosecute Dannelley for this forgery. We could send him to the penitentiary for it.'

"That the publication was made by oral statement by said Bard to and within the hearing of G. H. Winch, H. L. Jackson, Rex Shanks, R. K. Mims and Hal L. Brennan.

"Plaintiffs allege that said statements were false and known to be false at the time uttered and were meant to and did charge that these plaintiffs, who, as officers of said Photaudigraph Corporation, had executed the same, had altered and changed said contract in such a manner as to make them guilty of forgery and subject to be prosecuted for the offense, that said statements were wantonly and maliciously made for the purposes as herein alleged.

"Eighth. Plaintiffs further allege that the defendants, by and thru defendant, Bard, pursuant to said conspiracy, agreement, common understanding, design or purpose, did on or about the 1st day of October, 1927, in Webb County, Texas, make and publish the following statement, towit:

"'Is it not a fact that the contract submitted to you (Directors of the Photaudigraph Corporation) contained only three or four pages? Now look at this contract (Exhibiting Copy of Exhibit B). It contains 12 or 13 pages.'

"That said publication was made by oral statement of the said Bard to and within the hearing of G. H. Winch, H. L. Jackson, R. K. Mims, Rex Shanks, and Hal L. Brennan.

"That by said statement defendants meant to ·and did convey the idea that the contract executed (Exhibit B) was not the contract authorized by the directors of the Photaudigraph Corporation to be executed by these plaintiffs as its officers, and meant to and did charge these plaintiffs with having changed, substituted or altered the approved contract so as to alter, change and increase

the liability of said Company, and to charge these plaintiffs with the crime of forgery, or fraudulent making of said contract.

"Ninth. Plaintiffs further allege that, pursuant to said conspiracy, agreement, common understanding, design or purpose, the said defendants acting by and through the defendant, Pridgen, did on or about the 1st day of October, 1927, in Webb County, Texas, make and publish the following statement, towit:

" 'We (meaning the defendants) have enough on putting over that contract (Exhibit B) to seal Dannelley's mouth.'

"That said statement was made by the oral statement of the said Pridgen to and in the hearing of Hal L. Brennan.

"That by said statement defendants meant to and did convey the idea that these plaintiffs in executing the contract set forth in Exhibit B, had committed an offense against the laws of the State, towit; the crime of forgery, and that plaintiff, John L. Dannelley for that reason could not and would not dare to oppose anything defendants wanted for fear of criminal prosecution of plaintiffs for that crime.

"Tenth. Plaintiffs further represent to the Court that on or about the 26th day of October, 1927, the defendants, by and through their attorney, Geo. W. Thompson, stated and represented to the plaintiff, John L. Dannelley in substance, that the Vocafilm, Williams and Hochreich were not going to wait any longer for filing their suit, and that his clients, the defendants, were not going to give up one share of stock or raise one dollar to pay the Photaudigraph Corporation for an assignment of the United States Patent to The Aleograph Company, and further stated that the Postal authorities were investigating the Doctors (meaning defendants Pridgen, Hicks and Boehs) concerning their making certain false representations through the mail in the sale of their stock; that the Doctors were going to the Post Office inspectors and make a clean breast of the affair, which would be the same as pleading guilty, and if these things happened the whole proposition would be lost; that it was up to him, John L. Dannelley, to do anything he could to save something out of the wreck.

"Plaintiffs further allege that the stockholders of the Photaudigraph Corporation, other than these plaintiffs and The Aleograph Company owned stock to the amount of a few shares less than 25,000; that the plaintiff, John L. Dannelley, proposed to the Directors of the Photaudigraph Corporation that he would attempt to make it possible for The Aleograph Company to pay them one share of Aleograph stock for ten shares of Photaudigraph Corporation stock for the transfer of its patents to The Aleograph Company, and further advised said directors

that unless the proposition was accepted, or funds raised to defend the threatened suit in New York, the whole proposition would be lost; that said directors agreed to transfer the patents on the proposed basis, and thereafter did make such transfer; that plaintiffs, believing, as they had a right to believe, that unless such transfer was made and the suit of Vocafilm, Williams and Hochreich averted, the value of all their stock, as well as that of all others interested would be lost, and to make it possible for the defendant The Aleograph Company to acquire said patent, John L. Dannelley transferred to defendant, C. J. Boehs, as Trustee, for the benefit of The Aleograph Company 1,000 shares of his personal stock in The Aleograph Company, permitted the Directors of the Photaudigraph Corporation to cancel 20,000 shares of his personal stock in the Photaudigraph Corporation, being all the stock he had in said Corporation, and the plaintiff, Ila Dannelley, in order to effect the purchase of said Patent by The Aleograph Company, permitted the Directors of the Photaudigraph Corporation to cancel 5,000 shares of her personal stock in said company; being all the stock of Ila Dannelley in said Company.

"That by reason of the cancellation of said 25,000 shares of plaintiffs stock in said Photaudigraph Corporation, and the transfer of 1,000 shares of John L. Dannelley's stock in The Aleograph Company, to C. J. Boehs, The Aleograph Company was enabled to and did acquire the United States patents from the Photaudigraph Corporation for and in exchange of 2500 shares of its stock, and did thereafter make and execute—as plaintiffs are informed and believe, a new contract with The Vocafilm Corporation of America, W. Harry Williams, and David R. Hochreich, and no suit was filed by them.

"Plaintiffs further allege that at the time defendants made and entered into said conspiracy, the said 1,000 shares of Aleograph Stock were of the value of $25.00 per share, and were reasonably worth the sum of $25,-000.00; that at said time the said 25,000 shares of Photaudigraph Corporation stock were of the value of $10.00 per share, and reasonably worth $250,000.00:

"Plaintiffs further allege that The Aleograph Company stock, at and prior to the time of said conspiracy and the committing of the wrongful acts of defendants, had a market value in San Antonio, Texas, and said market value was $25.00 per share; and that the Photaudigraph Corporation stock had a market value in Laredo, Texas, and said market value was $10.00 per share.

"Plaintiffs allege that said stock was a complete and total loss to them, and that the wrongful acts of the defendants were the direct and proximate cause of said loss and damages.

"Eleventh. Plaintiffs further allege that they have always conducted themselves as good, true and honest citizens of this State from the time of their birth and during all of that time have been held, esteemed and reputed of good names, characters and reputations as well among a great number of their fellow citizens as among all their neighbors and acquaintances, and during all that time have been free from the atrocious crime of forgery, and/or fraudulent practices.

"Twelfth. That the defendants, in no wise ignorant of the premises, and of the good names, characters and reputations of these plaintiffs but contriving and maliciously intending not only to injure plaintiffs in their property rights, but to also deprive them of their good names, characters and reputations, maliciously, unlawfully and wilfully made and published the oral statements hereinabove alleged.

"Thirteenth. Plaintiffs say that on account of and by means of publishing the said false, scandalous and malicious words and statements they have been injured, prejudiced and damaged in their good names and reputations, and were said statements true these plaintiffs would be liable to prosecution for the crime of forgery; that by reason of said false, malicious and unlawful statements these plaintiffs have undergone great mental suffering and distress to their great damage.

"Fourteenth. Plaintiffs say that the words spoken, pronounced and published by the said defendants against and concerning these plaintiffs as aforesaid, were and are false and untrue, and were wilfully, maliciously and falsely spoken, pronounced and published by the defendants for the purpose and with the intention not only of injuring these plaintiffs and depriving them of their good names, characters and reputations, and causing them the property loss as herein alleged, but also to cause plaintiffs to lose the esteem and respect of their friends and neighbors, and the public generally, and that said wilfully, maliciously and falsely spoken, pronounced and published statements have caused these plaintiffs to be looked upon by their friends, neighbors, and the general public as unworthy of the esteem and companionship of honorable persons.

"Fifteenth. That by reason of the premises these plaintiffs have sustained special damages as hereinabove alleged in the amount of Two Hundred Seventy-Five Thousand ($275,000.00) Dollars, and have sustained general damages in the sum of Five Thousand ($5,000.00) Dollars, and that said slanderous statements were the direct and proximate cause of all of said damages.

"Sixteenth. Plaintiffs further allege that by reason of the wilful and malicious acts of the defendants, as aforesaid, plaintiffs are entitled to recover exemplary damages in the sum of Ten Thousand ($10,000.00) Dollars.

"Wherefore, plaintiffs pray the Court that on trial hereof plaintiffs have and recover of and from the said defendants—A. F. Bard, John L. Pridgen, W. D. Hicks, C. J. Boehs. Walter J. Daly—and The Aleograph Company, jointly and severally, the sum of Two Hundred Eighty Thousand ($280,000.00) Dollars, actual damages, and the sum of Ten Thousand ($10,000.00) Dollars exemplary damages, and costs of suit, and for such other and further relief, special and general, in law and in equity, to which they may be justly entitled in the premises."

We shall not discuss the assignments and counter assignments presented by the parties in their briefs, but will discuss only the questions we deem necessary to a disposition of the case. First, slander; and, second, duress.

■ The court sustained appellees' exceptions to the allegations in appellants' petition which sought to recover damages for alleged slander of appellants on the ground that said allegations were insufficient to constitute a cause of action for slander. In this there was no error. From an inspection of appellants' petition, set out above, it is obvious that this is not an action for damages for slander. There is no allegation of any definite amount of damages resulting from the alleged injury to their reputation or good name, neither is there any prayer for such a recovery.

Careful consideration of appellants' petition, we think, discloses an action for damages by means of duress alleged to have been effected by means of fraudulent and slanderous statements by appellees affecting the reputation of appellants, and the title of the Photaudigraph Corporation and of the Vocafilm Corporation to certain patent rights, whereby appellants alleged they suffered general damages in the sum of $5,000 and special damages in the sum of $275,000; the allegations of slander being simply allegations made for the purpose of showing the means or methods by which the appellees accomplished the purpose of forcing appellants to part with and lose their stock alleged to have been lost by them.

■ The court also sustained appellees' exceptions to the allegations in appellants' petition which sought to recover damages on the grounds of fraud and duress alleged to have been perpetrated upon appellants by appellees, the alleged result of such alleged fraud and duress being to cause appellants to part with and lose their stock in the two corporations mentioned in their petition, namely, the Photaudigraph Corporation and the Aleograph Company. As we view appellants' petition, the allegations of fraud were but a part of the allegations for the purpose of showing the methods by which appellees exercised their alleged duress upon appellants to cause them to transfer, sacrifice, and

lose their stock in the corporations alleged by them to have been thus lost; the object of the instant suit being to recover damages in the alleged sum of the value of said stock. This leads to the decisive question: Did appellants' petition sufficiently charge legal duress?

■We think the exceptions were properly sustained. Under the common law, duress was of two classes: (1) Duress by imprisonment; and (2) duress per minas. It is not alleged or contended that appellants, or either of them, were threatened with arrest or imprisonment or prosecution for any species of crime, so the first class or kind of duress is not involved. This narrows the question down to whether the petition of appellants alleges facts that would constitute legal duress.

The several corporations named—the Photaud'graph, of Laredo, Tex.; the Aleograph, of San Antonio, Tex.; and the Vocafilm, of New York City—were interested and engaged in producing and exhibiting movie films. The Photaudigraph Corporation owned a certain patent for the production of such films, to wit, United States patent No. 1,494,514. The Aleograph Company owned similar foreign patents, issued upon said United States patent as a basis. Appellants, as officers of the Photaudigraph Corporation, president and secretary, with the approval of and under the direction of the directors of the Photaudigraph Corporation, executed a contract with W. Harry Williams, David Hochreich, and the Vocafilm Corporation, authorizing them to make and distribute products under said patents. The Aleograph Company, owner of the foreign patents, acting by and through its board of directors, approved said contract.

Appellants alleged that appellees entered into a conspiracy the purpose of which was to wrongfully and unlawfully wrest from appellant John Dannelley the control of both the Photaudigraph and the Aleograph Corporations; and to wrongfully and unlawfully compel the Photaudigraph Corporation to transfer the United States patent to the Aleograph Company; and to wrongfully and unlawfully destroy and cause appellants to lose their stock in both the Photaudigraph and the Aleograph corporations. By reference to appellants' petition, supra, the matters alleged as the duress or method by which appellees sought to accomplish their purpose, are seen.

■Without discussing the allegations of appellants relative to the threatened filing of certain suits, either as to testing the validity of the contract with the Vocafilm Corporation, or by said corporation against appellant John Dannelley personally and against the Photaudigraph Corporation, we will say that threats of such suits did not constitute duress, for it is well settled that if the party asserting the claim to enforce which he will have to resort to court, there is no legal duress as that term is known in law, for a threat to do what one has a legal right to do, as bringing suit in court to enforce a claimed civil right, cannot constitute duress. 13 C. J., Contracts, p. 399; 9 R. C. L., Duress, § 11, p. 722; Robertson v. Lee (Tex. Com. App.) 249 S. W. 217, 220; Dale v. Simon (Tex. Com. App.) 267 S. W. 467, 470; Cameron County Water Improvement Dist. v. Handley (Tex. Civ. App.) 275 S. W. 298 (writ dismissed); Houston Ice & Brewing Co. v. Harlan (Tex. Com. App.) 228 S. W. 1090; Ward v. Scarborough (Tex. Com. App.) 236 S. W. 434, 437.

In Robertson v. Lee, supra, it was contended that the instruments in question were executed under duress. It was there urged that: "In order to avoid litigation, or the surrender of the property involved in this suit, defendants were compelled to execute agreements in writing, recognizing the rights of plaintiff, which defendants did not believe to exist in fact, and signed the statements in writing in regard to the rental of said property which have been exhibited to this court." In answering this contention, Judge McClendon of the Commission of Appeals said: "This, at most, was a threat on Lee's part to institute legal proceedings to assert his rights, which would not constitute duress."

In the instant case, in paragraph 6 of their petition, appellants allege that in order to avoid a threatened suit against the Photaudigraph Corporation and against appellant John Dannelley personally, which threatened suits they had the right to believe would be filed, unless the demands made upon appellants were acceded to, and that as neither the Photaudigraph Corporation nor appellant John L. Dannelley had funds with which to defend such threatened suits, and believing that the filing of the threatened suits would destroy all chances of the Photaudigraph Corporation to realize anything out of the venture, in which appellants had expended large sums of money, appellants were forced to and did yield to and comply with the demands so made upon them, by reason of which they parted with and lost their stock in said companies. It is seen that the allegations and contentions in the instant case are similar to those in Robertson v. Lee, and that such do not constitute duress.

■The further contention that appellees knew that appellants were without funds with which to defend the threatened suits, and thus took advantage of their financial inability to defend their rights in court, to oppress and coerce them into yielding to the demands made upon them, and that this was duress, is without force. The absence, financially, of appellants' ability to defend against threatened suits, does not render the

insistence of appellees in urging their claims, nor their threat to file suit to enforce same a duress. Alexander v. Commission Co. (Tex. Civ. App.) 34 S. W. 182 (writ refused); Silliman v. U. S., 101 U. S. 465–471, 25 L. Ed. 987.

Moreover, it sufficiently appears from appellants' petition that they were not in fear of losing their property by reason of the threatened suits relative to the validity of the contract in question, or the rights of the parties to act under and by virtue of same, for they say that "there existed no cause or probable cause upon which the Aleograph Company or any of its stockholders could base such a suit," but that the statements of defendants, appellees, were made for the purpose of causing litigation between the Vocafilm Corporation (one of the parties to the contract made by the Photaudigraph Corporation), on the one hand, and appellant John Dannelley and the Photaudigraph Corporation, on the other. Furthermore, the allegations in the petition show that the Aleograph Company owned no interest in the American patent, under which the Vocafilm Corporation was operating under its contract with the Photaudigraph Corporation, and which contract had been approved by the Aleograph Company, but that said corporation owned similar foreign patents issued and based upon said American patent, and there is no allegation that the Vocafilm Corporation was operating or intended to operate under the foreign patents; but if such allegation had been made, the threat of the Aleograph Company to bring suits to enjoin the Vocafilm Corporation from so operating would not have constituted duress under our holding above and the authorities cited, especially in view of appellants' allegation that "there existed no cause or probable cause upon which the Aleograph Company or any of its stockholders could base such a suit."

Again, the allegations in appellants' petition show that in transferring their stock, as alleged, they acted voluntarily, for the petition shows that appellant John L. Dannelley was in New York in touch with the officers of the Vocafilm Corporation and in position to give them all of the facts in regard to the ownership of the patent involved and the approval of the contract in question by the Aleograph Company. That after his return from New York, and having full knowledge of the demands made of him, and of the Photaudigraph Corporation, and after considering what action on his part would be best for the stockholders of the Photaudigraph Corporation in the premises, himself planned, proposed, and advised the action taken by said corporation and the transfer of his and his wife's stock in the corporations, and his proposal was accepted by all parties concerned and the transfers

were voluntarily made. Appellant John L. Dannelley is a lawyer of wide experience and ability, and knew his and the Photaudigraph Corporation's rights in the premises, and says in his petition that there existed no cause or probable cause to warrant the bringing of the threatened suits, and therefore that such could not have been successfully maintained, still with full knowledge of all the facts he voluntarily proposed and advised the doing of the thing that he alleges caused him and his wife to part with and lose their stock in the corporations. Under these facts no duress is shown.

But appellants say that the judgment should be reversed and the cause remanded because the court sustained the general demurrer to their petition, insisting that when all reasonable intendments are given the allegations in the petition, it was sufficient as against a general demurrer. It must not be forgotten that the court at first overruled the general demurrer, but after having sustained the exceptions to the allegations relative to slander, and the exceptions to the allegations relative to duress, the general demurrer was again urged and leveled against the petition as left after the several exceptions to slander and duress had been sustained, and the general demurrer was then also sustained, and appellants refusing to amend their petition, the suit was dismissed. The first exceptions having been properly sustained, the petition was subject to general demurrer, and the court did not err in sustaining same, and appellants refusing to amend, the suit was properly dismissed.

The judgment is affirmed.